Wayne W. Call, State Bar No. 56676
 wcall@calljensen.com
Mark L. Eisenhut, State Bar No. 185039
 meisenhut@calljensen.com
William P. Cole, State Bar No. 186772
 wcole@calljensen.com
Chris C. Scheithauer, State Bar No. 184798
 cscheithauer@calljensen.com
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel:   (949) 717-3000
Fax:  (949) 717-3100

Robert Corn-Revere, Washington D.C. Bar No. 375415
(seeking admission *pro hac vice*)
 bobcornrevere@dwt.com
Ronald G. London, Washington D.C. Bar No. 456284
(seeking admission *pro hac vice*)
 ronnielondon@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20006
Tel:   (202) 973-4235
Fax:  (202) 973-4425

Attorneys for Defendants OTA Franchise Corporation,
Newport Exchange Holdings, Inc., NEH Services, Inc.,
Eyal Shachar, Samuel R. Seiden and Darren Kimoto

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Federal Trade Commission**, | Case No.  8:20-cv-00287 JVS (KESx) |
| Plaintiff, | **DEFENDANTS' EX PARTE APPLICATION FOR CLARIFICATION OF TEMPORARY RESTRAINING ORDER AND REQUEST FOR PERMISSION TO PAY EMPLOYEES AND TO COLLECT MONEY** |
| vs. | |
| **OTA Franchise Corporation**, et al., | |
| Defendants. | |
| | Complaint Filed:   February 12, 2020<br>Trial Date:   None Set |

## *EX PARTE* APPLICATION FOR CLARIFICATION OF TRO AND REQUEST FOR PERMISSION TO PAY EMPLOYEES AND TO COLLECT MONEY

Pursuant to Central District Local Rule 7-19, Defendants OTA Franchise Corporation, Newport Exchange Holdings, Inc., NEH Services, Inc. (the "Corporate Defendants"), Eyal Shachar, Samuel R. Seiden, and Darren Kimoto (all collectively, "Defendants") hereby apply *ex parte* to this Court for (a) clarification of the scope of the Temporary Restraining Order with Asset Freeze, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "TRO") and (b) permission to pay amounts owing in the normal course of business (including employees and counsel) and collect money while otherwise fully complying with the TRO requirements.

**NOTICE TO OPPOSING COUNSEL:** Defendants' counsel has notified counsel for the FTC of its intention to bring the Application and notified the FTC that it will have 24 hours to file any response to the Application. (Eisenhut Decl., ¶ 3 Ex. A.) The FTC's counsel has not yet indicated whether the FTC will oppose the *ex parte* application. (*Id.*) The FTC's counsel's contact information is as follows:

Thomas Biesty
Rhonda Perkins
Andrew Hudson
Federal Trade Commission
600 Pennsylvania Ave., NW
Mailstop CC-8528
Washington, DC 20580
Fax: 202-326-3395

Email: tbiesty@ftc.gov; rperkins@ftc.gov; ahudson@ftc.gov

**GROUNDS FOR *EX PARTE* RELIEF:**

Defendants will fully comply with the Court's Temporary Restraining Order ("TRO"), including not making unsubstantiated earnings claims, not releasing customer information, preserving records, providing financial disclosures, providing prompt discovery, and other aspects of the TRO.

However, a few specific aspects of the "ASSET FREEZE" section and related provisions of the TRO, if interpreted literally, would produce results we believe were not intended, that would be immediately dire. The provisions identified below seem to prevent the Company from paying employees and vendors, or collecting money, both of which OTA has stopped doing pending a ruling on this application. However, the Company cannot survive until the Preliminary Injunction hearing if this requirement continues. The TRO would, thus, effectively decide the case by shutting down OTA as a viable entity.

Accordingly, we seek clarification to assure that Defendants can make payroll and health benefit payments for its over 300 employees and otherwise expend and receive funds only "in the ordinary course of business." Certain TRO provisions appear to allow this, while others suggest the opposite.

Specifically, in Section VII. C. of the TRO, the Court ordered that the restriction on "incurring charges" on credit cards does not apply to charges incurred "in the ordinary course of business." We hope and believe (and seek clarification that) the Court's intent was to similarly allow all expenditures and receipts of funds "in the ordinary course of business" (and not just authorize credit card charges "in the ordinary course of business"), including receipts of funds from customers who have experienced marketing and sales messaging that fully comply with Section I of the TRO.

Without that clarification, more than 300 employees and hundreds of independent contractors will nearly instantly lose their livelihoods and healthcare benefits (some of whom are known to be receiving treatment for life-threatening cancer), and 70,000 plus students with lifetime education rights at no additional cost to them will lose access to the training they paid for. See Decl. of Aaron Neilsen ("Neilsen Decl."). There is a $1.1M payroll due (plus an additional $250,000 for benefits) that needs to be processed today (February 26, 2020), or employees who have already earned their wages will not be paid, their healthcare benefits will not be provided, and tax withholdings owing to the federal and state governments will not be satisfied. (Neilsen Decl., ¶¶ 1-21). In

addition to employee payroll, the Company incurs approximately $8.3 million in operating expenses (e.g., electricity, phone, email servers, internet access, other utilities) per month in the ordinary course of business that it will not be able to pay without revenue and without the legal right to pay. (*See id.* ¶ 14). We do not believe this was the Court's intent.

Specifically, there are three aspects of the Order that, if interpreted literally, will lead to the above tragic results.

(1)  Section VII. ASSET FREEZE prevents the Corporate Defendants from "spending . . . any assets." Unlike the credit card provision in Section VII. C. , there is no carve-out for spending assets "in the ordinary course of business." This strict interpretation would mean the Corporate Defendants cannot pay amounts owing, even in the normal course of business, to employees, key vendors, counsel defending them in this matter, counsel pursuing their insurance carriers for coverage, etc.

(2)  Section VIII. DUTIES OF ASSET HOLDERS directs any "business entity, or person" including banks that hold any Corporate Defendant assets to "Hold . . . and prohibit the withdrawal . . . or other disposal" of any such "asset of any Corporate Defendant."

   a.  This seems to block all access to any of the Corporate Defendants' money in any account, thus foreclosing any ability to pay amounts incurred in the ordinary course of business to employees, key vendors, attorneys, etc.

(3)  Section VII. D. prohibits "cashing any checks or depositing any money orders or cash received from consumers, clients, or customers" and Section III prohibits "collecting loan payments."

   a.  Section I provides rules for how Defendants may market and sell their education. However, this section VII.D. seems to mean that even though the Corporate Defendants will fully comply with the requirements of Section I and make no improper earnings claims, etc., they still cannot receive money from customers and will thus have

no income whatsoever to support the business, and will have no ability thereby to pay amounts they are obligated to pay, even in the ordinary course of business.

In addition to causing OTA's demise, the consequences of these provisions would include:

(1) Payroll, including all health benefits and tax withholdings, will not be paid, which have to be processed today (February 26, 2020). Furthermore, failure to pay employee wages will subject OTA to a host of statutory penalties and claims under state and/or federal wage laws and regulations.

(2) Independent contractors, including many instructors, will not be paid.

(3) Key vendors, including those who provide utilities, online services, etc. will not be paid.

(4) Attorneys will not be paid for any services they provide to OTA for the defense of this matter, and other legal assistance vital to OTA's current existence.

(5) The lack of payment to employees will likely lead to the departure of employees, which means the 70,000-plus students will have no access to live training (Nielsen Decl., ¶¶ 16-17), and, if electronic vendors are not paid, no access to online training. It also means the Corporate Defendants will have no employees, vendors, or attorneys to help them comply with this Court's Order, which requires gathering information and documents, filling out financial disclosure forms, notifying various parties of this Court's Order, sitting for depositions (the FTC has already indicated several they want to take), and the like. (Neilsen Decl., ¶¶ 18-19).

We believe the Court did not intend for the order to include these end-the-company requirements, particularly where the enterprise has existed for 22 years, has 48 brick-and-mortar locations, and but for the aforementioned sections of the TRO, would be able to continue its existence and at the same time fully satisfy any genuine concerns from the conduct alleged by the FTC. (Neilsen Decl., ¶¶ 5, 21). Accordingly, Defendants respectfully request immediate clarification and/or permission to proceed as follows:

- • Defendants may pay all expenses incurred in the ordinary course of business, including payroll and amounts owing to attorneys and other vendors.
- • Defendants may access funds in any and all accounts for purposes of making payments incurred in the ordinary course of business or in defending this lawsuit.
- • Defendants may collect funds from any source so long as Defendants fully comply with the requirements of Section I of the Order.

*Ex parte* relief is warranted where, as here, (1) a party would be "irreparably prejudiced" if *ex parte* relief were denied; and (2) the moving party is without fault in creating the crisis that requires *ex parte* relief. *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 492 (C.D. Cal. 1995). Through no fault of their own, Defendants will be irreparably prejudiced if the Court does not grant the relief requested herein. (See Eisenhut Decl., ¶ 2; Nielson Decl., ¶¶ 1-21.)

Dated: February 26, 2020

CALL & JENSEN
A Professional Corporation
Wayne W. Call
Mark L. Eisenhut
William P. Cole
Chris C. Scheithauer

By: */s/ Mark L. Eisenhut*
     Mark L. Eisenhut
Attorneys for Defendants

# DECLARATION OF MARK L. EISENHUT

I, Mark L. Eisenhut, declare and state as follows:

1. I am an attorney admitted to practice before all of the courts of the State of California and before this Court, and I am a shareholder at Call & Jensen, A Professional Corporation, counsel of record for Defendants OTA Franchise Corporation, Newport Exchange Holdings, Inc., NEH Services, Inc., Eyal Shachar, Samuel R. Seiden, and Darren Kimoto ("Defendants"). I have personal knowledge as to all matters set forth in this Declaration, and could and would competently testify to them under oath if called as a witness. I make this Declaration in support of the *Ex Parte* Application by Defendants for Clarification Regarding TRO and Request for Permission to Collect Money and Pay Employees (the "Application").

## Grounds for *Ex Parte* Relief

2. *Ex parte* relief is warranted for all of the reasons articulated in this Application and in the Declaration of Aaron Neilsen.

## Notice to the FTC

3. My office contacted the FTC's counsel on February 25, 2020 at 9:09 p.m. via email and informed them of Defendants' intention to bring this Application. (A true and correct copy of that email is attached hereto as **Exhibit A**.) In the same email, my office informed the FTC's counsel that the FTC will have no more than 24 hours to respond to the Application per Judge Selna's Procedures. (Ex. A.) The FTC's counsel has not yet indicated whether the FTC will oppose the *ex parte* application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This Declaration was executed on February 26, 2020, at Newport Beach, California.


/s/Mark L. Eisenhut
Mark L. Eisenhut



**EXHIBIT A**

| | |
|---|---|
| **From:** | Todd Bouton |
| **Sent:** | Tuesday, February 25, 2020 9:09 PM |
| **To:** | ahudson@ftc.com; tbiesty@ftc.com; rperkins@ftc.com |
| **Cc:** | Mark Eisenhut; William Cole; Chris Scheithauer; Wayne Call |
| **Subject:** | Ex Parte Notice-FTC v. OTA |

Mr. Hudson:

I am sending you this email on behalf of Mark Eisenhut to advise you that OTA intends to file another Ex Parte Application tomorrow.

 (Given the time difference, we expect you will see this email first thing tomorrow.)

The ex parte application will seek clarification about the TRO and permission to pay employees and other expenses while the TRO is in effect.

Please be advised that you will have 24 hours after you are served with the application to notify the Court whether you intend to oppose the application.

Feel free to contact Mark if you have any questions about the ex parte.

Best regards,

Todd

Sent from my iPhone