Thomas M. Biesty (NY Bar No. 4172896)
(*pro hac vice* application pending)
(202) 326-3043 / tbiesty@ftc.gov
Rhonda Perkins (VA Bar No. 75300)
(*pro hac vice* application pending)
 (202) 326-3222 / rperkins@ftc.gov
Andrew Hudson (DC Bar No. 469817)
(*pro hac vice* application pending)
 (202) 326-2213 / ahudson@ftc.gov
600 Pennsylvania Ave., NW, CC-8528
Washington, DC 20580

Local Counsel
John Jacobs (CA Bar No. 134154)
(310) 824-4300 / jjacobs@ftc.gov
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
(310) 824-4380 (fax)

Attorneys for Plaintiff
Federal Trade Commission

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Federal Trade Commission**, <br><br> Plaintiff, <br><br> vs. <br><br> **OTA Franchise Corporation**, et al., <br><br> Defendants. | No. __8:20−cv−287 <br><br> **Plaintiff's Opposition to Defendants' Ex Parte Application for Clarification of Temporary Restraining Order** |

On February 25, 2020, this Court issued a Temporary Restraining Order ("TRO") that included provisions freezing the assets of OTA Franchise Corp.,

1    Newport Exchange Holdings, Inc., and NE Holdings, Inc., ("Corporate

2    Defendants"). Dkt. 46. On February 26, 2020, Defendants filed an Ex Parte

3    Application for Clarification of the TRO. Dkt. 48 (hereinafter, "Application"). The

4    FTC had no advance notice of the Application.[1]

5          On February 26, 2020, within hours of the filing, the FTC met and conferred

6    with Defense counsel via telephone. *See* Declaration of Counsel, ¶¶ 4-5, (filed

7    herewith). Among other things, the FTC noted the reference in the Application to

8    certain employees receiving "life-saving cancer treatments" (Dkt. 48-1, p.2), and

9    asked Defense counsel whether any health insurance policies would be terminated

10   between now and the show-cause hearing on March 12, 2020, if premiums are not

11   paid during that time. *Id*. ¶ 5. Defense counsel was not able to confirm any such

12   consequence during the telephone call, but advised he could seek additional

13   information from Defendants. FTC counsel asked that any such information be

14   provided so that the FTC could consider it in its response to the Application. *Id*.

15         Since then, Defense counsel, via email, represented that OTA employees are

16   concerned about potential cancellation of insurance, including that OTA's HR

17   manager has experienced such cancellations in the past. *Id*. at ¶ 6. Defense counsel

18   did not represent that the insurance at issue here would be cancelled absent

19   payment of premiums prior to March 12, 2020. *Id*. As of the time of this filing,

20   Defendants have not made any such representation to the FTC, and have provided

21   no additional evidence to the FTC. *Id*. at ¶ 7.

## ARGUMENT

23         Defendants seek permission to spend $8.3 million per month on supposed

24   "ordinary course" business expenses. Such a revision would all but write the asset

25   freeze out of the TRO. As this Court found in granting the TRO:

---

[1] Although it appears Defendants attempted to notify the FTC via email to counsel, the email was not sent to FTC counsel's email addresses. *See* Dkt. 48, p.9 (copy of email, addressed to "@ftc.com" addresses, rather than "@ftc.gov").

> There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers – including monetary restitution, rescission, disgorgement, or refunds –will occur from the sale, transfer, destruction, or other disposition or concealment by Defendants of their assets or records, unless Defendants are immediately restrained and enjoined by order of this Court.

Dkt. 46, p.3. The relief Defendants seek would allow the Corporate Defendants to do just that—transfer or dispose of money that the TRO's asset freeze provisions would otherwise preserve for potential redress to consumers. Defendants fail to show that such relief is warranted.

## I.      Legal Standard

"A party seeking modification . . . of an injunction bears the burden of establishing that a significant change in facts or law warrants revision . . . of the injunction." *State v. Trump*, 871 F.3d 646, 654 (9th Cir. 2017) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)); *see also FTC v. Kutzner*, No. 16-CV-00999, 2017 WL 5229182, at *6 (C.D. Cal. June 12, 2017) (denying request to modify preliminary injunction because "it does not identify any changed circumstances that would justify the preliminary injunction's … modification."); *see also* Order, *FTC v. Rincon Mgmt. Servs., LLC, et al.*, No. 5:11-CV-01623 (C.D. Cal. Jan. 31, 2012) (attached hereto as **Attachment A**) (denying request to modify preliminary injunction in part because defendants presented no new law, and the "new" evidence could have been presented previously and did not warrant the requested modifications).

## II.     The Requested Modification Has No Basis in the Facts or the Law

Defendants' requested "clarification" would drastically re-write the TRO. Defendants' chief argument for this drastic change is that without it, "the Company cannot survive until the Preliminary Injunction hearing." Dkt. 48, p.3. Defendants

made this argument in opposition to the issuance of the TRO, but chose to present no evidence in support of it. *See* Dkt. 37, p.5. Defendants now submit a declaration from OTA's Chief Financial Officer. Dkt. 48-1. But this belated declaration provides few concrete details, and consists largely of speculation.

The most concrete claim of harm is a reference to "some employees … receiving life-saving cancer treatment which could be terminated if the insurance is not funded." Dkt. 48-1, p.2. But, as addressed above, as of the time of this filing, Defendants have not represented to the FTC that any insurance policies will be terminated between now and the March 12, 2020 show-cause hearing, much less provided evidence to support such a claim. Declaration of Counsel, ¶ 7.

Defendants' arguments are not "new," and they fail to present evidence to support them. Defendants fail to meet their burden to show a significant change in the facts or law, much less that such change warrants modification of the TRO. Defendants' Application should be denied.

## III.   There Is No Basis to Release Frozen Funds to Pay Attorneys' Fees

Defendants also mention that they wish to use frozen funds to pay their attorneys in this matter. But such expenses are not "in the ordinary course of business." Defendants offer no other explanation to show why the Court should allow them to use ill-gotten funds to pay counsel, fail to cite the relevant case law, and fail to provide evidence necessary to support their argument.

The Ninth Circuit has "recognized the importance of preserving the integrity of disputed assets to ensure that such assets are not squandered by one party to the potential detriment of another." *FSLIC v. Ferm*, 909 F.2d 372, 374 (9th Cir. 1990). District courts in the Ninth Circuit have considered the following factors, individually and in various combinations, in determining whether to release frozen funds to pay legal fees: (1) the likelihood that plaintiff will prevail on the merits; (2) the availability of assets for consumer redress; (3) the reasonableness of defendant's request; (4) whether defense counsel was aware of the possibility that

the court might deny or limit attorney fees; and (5) a defendant's access to alternative assets. *See FTC v. Johnson*, No. 2:10-CV-02203, 2015 WL 9243920, at *2 (D. Nev. Dec. 17, 2015) (applying all five factors); *Noble Metals*, 67 F.3d at 775 (considering availability of assets for consumer redress); *World Wide Factors*, 882 F.2d at 348 (considering reasonableness of request, approving of district court's desire to limit release to "reasonable" attorneys' fees); *FTC v. LoPinto*, No. CV-S-93-0561, 1994 U.S. Dist. LEXIS 21695, at *3-4 (D. Nev. Feb. 1, 1994) (defense counsel was aware that he might not receive payment from frozen funds when he took on the representation; releasing funds "would decrease the amount of funds available for restitution" to consumers); *FSLIC v. Ferm,* 909 F.2d 372, 374 (9th Cir. 1990) (citing likelihood of plaintiff's success on the merits and reasonableness of request).

Defendants fail to address these factors. All cut against releasing funds. As to (1) and (2), this Court has already determined that, based on the evidence presented thus far, the FTC is likely to prevail on the merits and "[t]here is good cause to believe that" absent an asset freeze there will be "immediate and irreparable damage to the Court's ability to grant effective final relief for consumers." Dkt. 46, pp.2-3. Defendants fail to show otherwise. As to (4), the FTC advised Defendants, through counsel, of the relief requested in the TRO before this case was filed. Dkt. 13, ¶ 23. As to factor (3), Defendants' request for funding is unlimited and unsupported by any explanation. Defendants do not even explain whether counsel already holds funds from a retainer or otherwise that may be billed against. Defendants effectively ask the Court for a blank check, without showing that any amount is needed at all. This is the antithesis of a reasonable request. As to (5), Defendants provide no information, much less evidence, demonstrating a lack of access to alternative sources of funding.

1

## CONCLUSION

2       Defendants' Ex Parte Application presents no "new" arguments that could

3 not have been made before the issuance of the TRO and identifies no change in the

4 facts or the law. And the only evidence it provides is conclusory at best. As it did

5 when the Court issued the TRO, the evidence shows the FTC is likely to prevail,

6 and that the asset freeze is warranted. There is no basis for the requested

7 modification of the TRO. Defendants' application should be denied.

8

9                                 Respectfully submitted,

10                                ALDEN F. ABBOTT
                                  General Counsel
11

12

13   Dated:  February 27, 2020        /s/ Andrew Hudson

14                                Thomas M. Biesty
                                  Rhonda Perkins
15                                Andrew Hudson
                                  Federal Trade Commission
16                                600 Pennsylvania Ave., NW
                                  Mailstop CC-8528
17                                Washington, DC 20580
                                  (202) 326-3043 / tbiesty@ftc.gov
18                                (202) 326-3222 / rperkins@ftc.gov
                                  (202) 326-2213 / ahudson@ftc.gov
19

20

21                                John Jacobs
                                  Federal Trade Commission
22                                10990 Wilshire Boulevard, Suite 400
                                  Los Angeles, California 90024
23                                (310) 824-4300 / jjacobs@ftc.gov

24

25                                Attorneys for Plaintiff
                                  FEDERAL TRADE COMMISSION
26

27

28

# PRIORITY SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES -- GENERAL</u>

Case No.   EDCV 11-01623 VAP (SPx)                    Date:  January 31, 2012

Title:       FEDERAL TRADE COMMISSION -v- RINCON MANAGEMENT
             SERVICES, LLC, et al.
================================================================
PRESENT:          HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

          Marva Dillard                              None Present
          Courtroom Deputy                           Court Reporter

ATTORNEYS PRESENT FOR                  ATTORNEYS PRESENT FOR
PLAINTIFFS:                            DEFENDANTS:

          None                                   None

PROCEEDINGS:          MINUTE ORDER DENYING DEFENDANTS' MOTION TO
                      MODIFY THE PRELIMINARY INJUNCTION (IN
                      CHAMBERS)

     Before the Court is a Motion to Modify the Preliminary Injunction ("Motion")
filed by Defendants Rincon Management Services, LLC, Prime West Management
Recovery, LLC, Pacific Management Recovery, LLC, National Filing Services, LLC,
City Investment Services, LLC, Global Filing Services, LLC, Union Management
Services, LLC, Jason R. Begley, and Wayne W. Lunsford[1] (collectively,
"Defendants").  After considering the papers in support of, and in opposition to, the

_____

     [1] Collectively, "Individual Defendants".

MINUTES FORM 11                                 Initials of Deputy Clerk __md__
CIVIL -- GEN                    Page 1

**Attachment A**

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

Motion, the Court DENIES Defendants' Motion.

# I. BACKGROUND

## A.    Procedural Background

Plaintiff filed a complaint ("Complaint") against Defendants on October 11, 2011.  (Doc. No. 1.)  Plaintiff alleged Defendants operated as a common enterprise in conducting business practices in violation of: (1) Section 5(a) of the Federal Trade Commission ("FTC") Act; and (2) The Fair Debt Collection Practices Act ("FDCPA"). (Compl. (Doc. No. 1) ¶ 17.)

On the same date, Plaintiff submitted an ex parte application for a temporary restraining order ("TRO") requesting the Court (1) freeze Defendants' assets; (2) appoint a temporary receiver; (3) allow Plaintiff immediate access to Defendants' business premises; (4) allow for expedited discovery; and (5) issue an order to show cause why a preliminary injunction should not issue.  (See Doc. No. 3.)  In support of its TRO Application, Plaintiff also submitted numerous declarations in support of the claims alleged in the Complaint.  (See Doc. Nos. 6, 7.)  Plaintiff requested the Court temporarily seal the Court file and docket in order to prevent Defendants from destroying or concealing evidence.  (Doc. No. 8.)  On October 11, 2011, the Court granted the TRO, (Doc. No. 5), and sealed the docket for four business days, (Doc. No. 9).

The parties stipulated to extend the TRO and continue the hearing on the issuance of a preliminary injunction.  (Doc. No. 20.)  On October 20, 2011, the Court extended the TRO through the date set for the preliminary injunction hearing, November 7, 2011.  (Doc. No. 21.)  The Court ordered Plaintiff to file any supplemental evidence and memorandum no later than six days before the hearing, and Defendants to file any objections or opposition no later than four days prior. (Id.)

Plaintiff filed the Supplemental Brief in Support of FTC's Application for Preliminary Injunction and Appointment of Permanent Receiver ("Supplemental Brief") on November 1, 2011.  (Doc. No. 25.)  Plaintiff also filed a Proposed Preliminary Injunction ("Proposed Order") seeking to:
(1)    Prohibit Defendants' use of unfair, deceptive, or abusive acts or practices;

MINUTES FORM 11                                        Initials of Deputy Clerk __md__
CIVIL -- GEN                    Page 2

**Attachment A**

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

(2)    Freeze the assets in any HSBC or Bank of America account in the name of any Defendant, as well as the assets in any of the 40 other bank accounts allegedly associated with Defendants' unlawful debt collection business;

(3)    Order Defendants to complete and deliver to Plaintiff the financial statement, an exemplar of which was attached to the TRO;

(4)    Order Defendants to preserve any documents relating to their business practices or finances;

(5)    Order Defendants to keep daily records of any income and financial transactions and to provide these records to Plaintiff's counsel upon request;

(6)    Restrain Individual Defendants from exercising any control over a business entity without first serving on Plaintiff's counsel a written disclosure including the business's name and address, and the names of directors, principals, officers, managers, and employees of the business, as well as a detailed description of the business entity's intended activities;

(7)    Order financial institutions possessing Defendants' records or assets to retain and preserve them, deny Defendants' access to any safety deposit box, and provide Plaintiff upon request with the identification of each account or asset, as well as copies of Defendants' financial records;

(8)    Order financial institutions to convert Defendants' stocks, bonds, options, mutual funds, or other securities to their cash equivalent upon direction of Plaintiff or the Receiver;

(9)    Order Defendants to repatriate and retain their assets and provide Plaintiff and the Receiver with a full accounting of all assets outside the United States;

(10)   Appoint Richard Weissman as the Permanent  Receiver ("Receiver") and authorize him to manage the business and assets of Defendants;

(11)   Order Defendants to cooperate with the Receiver and transfer funds to the Receiver;

(12)   Stay any action against or on behalf of Defendants, their assets, or the Receiver or the Receiver's agents;

(13)   Compensate the Receiver;

(14)   Order the Receiver to file a bond with the Court;

(15)   Order Defendants to provide copies of the Order to affiliates, and related business partnerships within three business days of service of the Order;

(16)   Allow Plaintiff to obtain credit reports on any Defendant and order any credit reporting agency to provide the reports to Plaintiff;

MINUTES FORM 11                              Initials of Deputy Clerk __md__
CIVIL -- GEN                  Page 3

**Attachment A**

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

(17)   Grant Plaintiff leave to depose any person or entity without limitation to discover Defendants' business activities;

(18)   Grant Plaintiff leave to demand production of documents from any person or entity relating to Defendants' assets or business transactions.

(Prop. Order (Doc. No. 25) at 4-24.)

On November 1, 2011, Defendants filed their opposition to the Supplemental Brief.  (Doc. No. 26.)  On November 3, 2011, Plaintiff filed the Receiver's First Report ("First Receiver Report") along with attached exhibits.  (Doc. No. 30.)

The Court imposed the preliminary injunction on November 10, 2011.  (Doc. No. 40.)  The Court also issued a tentative opinion articulating the Court's reasoning to the parties at the hearing.  (See Doc. No. 38.)

On December 21, 2011, Defendants filed the instant Motion, and attached the declaration of Jason Begley ("Begley Declaration"), along with exhibits A through J. (Doc. No. 45.)  Plaintiff filed its Opposition on January 9, 2012, (Doc. No. 68), and the Receiver Richard E. Weissman ("Receiver") filed his Opposition on January 11, 2012, (Doc. No. 69).  Defendants filed their Reply on January 13, 2012.  (Doc. No. 70.)

## B.   Plaintiff's Allegations

Plaintiff claims Defendants operated as interrelated companies conducting unlawful debt collection activities.  (Compl. ¶¶ 15, 17.)  Defendants began operations in 2009 and have since expanded their debt-collections business.  (Id. ¶ 21.)

Defendants unlawfully collect debts by untruthfully telling consumers that a lawsuit has been, or soon will be, filed against a consumer.  (Id. ¶ 18.)  Defendants assert falsely that the consumer owes attorneys' fees and court costs for the fictitious legal action.  (Id.)  Defendants also represent falsely they are process servers seeking to serve the consumer with legal papers pertaining to a lawsuit. (Id.)  Defendants then threaten consumers with legal action, arrest, or seizure, garnishment, or attachment of the consumer's property or wages if the consumer

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

does not agree to pay the alleged debt.  (Id.)  Plaintiff avers that Defendants have no intention of taking the threatened legal action, nor would such action be warranted or lawful.  (Id.)

Defendants begin their unlawful debt collection practices with a call from Defendants' first-level collectors, usually to a consumer's employer, family member, friend, or neighbor.  (Id. ¶ 23.)  Defendants' collectors misrepresent that they are process servers who are seeking to serve the consumer with pleadings or "papers" pertaining to a lawsuit.  (Id.)  The collectors leave messages for the third parties to relay to the consumer, and threaten that the consumer must call back that day or the consumer will be personally served with process to appear in court.  (Id.)  In some instances, the collectors also misrepresent that they are from the sheriff's "department" and threaten to arrest the consumer if the consumer does not call back the telephone number left for the consumer promptly.  (Id.)  Alternatively, Defendants' collectors call the consumer directly, and threaten to serve the consumer with "court papers."  (Id. ¶ 24.)  Defendants provide the collectors with scripts, including Spanish translations, to use for the calls.  (Id. ¶¶ 26-32.)

When consumers return the initial call, Defendants' collectors advise the consumers that they can "settle" the action by paying the entire debt immediately or over time through a payment plan.  (Id. ¶ 33.)  Defendants' collectors inform consumers to make the payment over the telephone with their credit card or bank account.  (Id.)

Plaintiff claims that Defendants do not intend to take legal action, and in numerous instances cannot take such action because the consumer owes no debt. (Id. ¶ 36.)  Instead, Defendants provide consumers with telephone numbers to Defendants' collections offices in order to collect the alleged debt from the consumer unlawfully.  (Id.)

## II. LEGAL STANDARD

### A.    Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24-25 (2008); see also Stormans, Inc. v. Selecky, 586 F.3d 1109, 1126-27 (9th Cir. 2009). "A preliminary injunction is an extraordinary and drastic remedy . . .; it is never awarded as of right." Munaf v. Green, 553 U.S. 674, 689-90 (2008) (citations omitted). Moreover, because a preliminary injunction is an extraordinary remedy, the movant must carry her burden of persuasion by a "clear showing." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); City of Angoon v. Marsh, 749 F.3d 1413, 1415 (9th Cir. 1984).

In cases involving the FTC Act, however, courts apply the more lenient standard provided under Section 13(b) of the Act. 15 U.S.C. § 53(b). Section 13(b) requires the Court to consider only the likelihood of success on the merits and the balance of the equities. FTC v. Affordable Media, LLC, 179 F.3d 1228, 1233 (9th Cir. 1999); see also FTC v. Warner Commc'ns, Inc., 742 F.2d 1156, 1159 (9th Cir. 1984). Section 13(b) does not require the FTC show irreparable harm to obtain a preliminary injunction under the Act. Id. Section 13(b) also applies this standard to "any provision of law enforced by the Federal Trade Commission." 15 U.S.C. § 53(b)(1).

## B.    Modification of a Preliminary Injunction

A district court which has ordered an injunction retains the power to modify it. United States v. Business Recovery Servs., LLC, No. CV11–390–PHX–JAT, 2011 WL 4915192, at *5 (D. Ariz. Oct. 17, 2011) (modification of preliminary injunction) (citing Clark v. Coye, 60 F.3d 600, 606 (9th Cir. 1995)). "The source of the power to modify is . . . the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief." Sys. Fed'n No. 91 Ry. Emps.' Dep't v. Wright, 364 U.S. 642, 647 (1961); see also A&M Records v. Napster, Inc., 284 F.3d 1091, 1098 (9th Cir. 2002).

A party seeking modification of an injunction bears the burden of establishing that a significant change in facts or law justifies revision of the injunction. Sharp v. Weston, 233 F.3d 1166, 1170 (9th Cir. 2000); Se. Alaska Conservation Council v. United States Army Corps of Eng'rs, 472 F.3d 1097, 1101 (9th Cir. 2006).

Case 8:20-cv-00287-JVS-KES   Document 51   Filed 02/27/20   Page 13 of 24   Page ID
#:10183
Case 5:11-cv-01623-VAP-SP   Document 77   Filed 01/31/12   Page 7 of 18   Page ID #:2559

EDCV 11-01623 VAP (SPx)
**FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.**
**MINUTE ORDER of January 31, 2012**

The court then considers whether the proposed modification is suitably tailored to the changed circumstances.  Rufo v. Inmates of Suffolk Cnty. Jail, 502 U.S. 367, 391 (1992).  In reviewing the motion to modify, the court limits its review to the new material the moving party presents.  Sharp, 233 F.3d at 1169-70.

A new declaration attesting to a defendant's lack of liability for the underlying charges on its own does not constitute a significant change in the facts.  Business Recovery Servs., 2011 WL 4915192, at *13-14.  Likewise, raising legal arguments based on law that "existed when the [c]ourt held the hearing on the [m]otion for [p]reliminary [i]njunction" does not suffice to justify a modification.  Id. at *14.

# III. DISCUSSION
## A.   Scope of the Preliminary Injunction

The preliminary injunction continued the injunctive relief provided in the TRO, and appointed Richard Weissman as the permanent receiver.  (Preliminary Injunction ("PI") (Doc. No. 40) at 14.)  The Court also froze assets in several additional bank accounts, which were related to Defendants' business activities.  (Id. at 6-8.)  The Court's Order allowed Plaintiff to conduct discovery by accessing Defendants' records and deposing persons with information on Defendants' business practices.  (Id. at 4-24.)  Under the preliminary injunction, financial institutions were also required to retain Defendants' assets, and to deny Defendants access to any of their safety deposit boxes.  (Id. at 12-13.)

Defendants argued in opposing the preliminary injunction that the scope of the injunctive relief was overly broad because: 1) the complete freeze of their assets had prevented them from paying merchant accounts, (Opp'n to PI (Doc. No. 26) at 1.); 2) there was nothing to suggest they were likely to dissipate their assets, (Id. at 5-6.); and 3) the asset freeze presented an undue hardship because Defendants

would be precluded from paying their normal living expenses and attorneys' fees, (Id. at 7.)

Defendants also argued the Receiver's role should be limited to monitoring Defendants' business to ensure compliance with the FTC Act and the FDCPA.  (Id. at 8.)  Defendants proposed that Individual Defendants should continue to control

**Attachment A**

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

their personal and business accounts.  (Id.)

Notwithstanding Defendants' arguments, the Court granted Plaintiff's Motion for Preliminary Injunction on November 10, 2011.  (Doc. No. 40.)

## B.   Facts and Law Supporting the Preliminary Injunction
The facts and law supporting the Court's issuance of the preliminary injunction were articulated at length in the Court's tentative ruling on Plaintiff's Motion for Preliminary Injunction.  (See Doc. No. 38 (Minutes of Nov. 10, 2011, Hearing).)  As the Court did not issue a final written version of this opinion, however, the Court provides a summary of the relevant facts and law here.

### 1.   Legal Basis for the Preliminary Injunction
In considering whether or not to grant preliminary injunctive relief under Section 5(a) of the FTC Act, the Court applied the lenient standard under Section 13(b).  15 U.S.C. § 53(b).  Section 13(b) of the Act requires a court to consider only the likelihood of success on the merits and the balance of the equities.  Affordable Media, 179 F.3d at 1233; see also Warner Commc'ns, 742 F.2d at 1159.  Section 13(b), therefore, did not require the FTC show irreparable harm to obtain the preliminary injunction under the Act.  Id.

The Court held that the FTC could meet its burden of showing likelihood of success on the merits "if it show[ed] preliminarily, by affidavit or other proof, that it ha[d] a fair and tenable chance of ultimate success on the merits."  FTC v. Beatrice Foods Co., 587 F.2d 1225, 1229 (D.C. Cir. 1978).  The FTC could show a likelihood of success based on representative claims that indicated a pattern or practice of deceptive behavior.  FTC v. Sec. Rare Coin & Bullion Corp., 931 F.2d 1312, 1316

(8th Cir. 1991).  The court could also consider hearsay evidence.  Flynt Distrib. Co., Inc. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984).

The Court found that the evidence the FTC submitted showed a likelihood of success on the merits for the claim brought under Section 5(a) of the FTC Act, as well as for the five claims brought under the FDCPA.

MINUTES FORM 11                                    Initials of Deputy Clerk __md__
CIVIL -- GEN                        Page 8

**Attachment A**

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

Section 5(a) of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C.§ 45(a)(1).  Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited under Section 5(a).  Trans World Accounts, Inc. v. FTC, 594 F.2d 212 (9th Cir. 1979).  A plaintiff must show probable, not possible, deception, and must show potential deception of consumers acting reasonably in the circumstances.  Sw. Sunsites, Inc. v. FTC, 785 F.2d 1431, 1436 (9th Cir. 1986).  The deception standard under Section 5(a) considers as material only those deceptive statements that are likely to cause injury to a reasonable relying consumer.  Id.

The Court found Plaintiff's evidence showed Defendants made material misrepresentations to consumers that were likely to cause injury to a reasonable relying consumer.  Hence, there was a strong likelihood of success on the FTC Act claim.

The Court also found a strong likelihood of success on the merits of Plaintiff's FDCPA claims.  The evidence strongly suggested Defendants violated Section 805(b) by communicating with third parties for purposes other than acquiring location information about a consumer, without having obtained directly the prior consent of the consumer or the express permission of a court of competent jurisdiction, and when not not reasonably necessary to effectuate a post-judgment judicial remedy. 15 U.S.C. § 1692c(b).

The facts also strongly suggested Defendants violated Section 806(6) by engaging in conduct "the natural consequence of which is to harass, oppress, or abuse" a person by placing telephone calls without meaningful disclosure of the caller's identify.  15 U.S.C. § 1692d.

Finally, the evidence strongly suggested Defendants violated Section 807 by using "false, deceptive, or misleading representation or means."  15 U.S.C. § 1692e.

## 2.    Factual Basis for the Preliminary Injunction

The Court found Plaintiff provided ample evidence demonstrating Defendants misrepresented the existence of outstanding debts to consumers and that the consumers reasonably relied on this deception to their detriment.  The Court considered Plaintiff's ex parte TRO Application, which included declarations of

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

dozens of consumers describing how Defendants had attempted to collect non-existent debts unlawfully.  (See Decls. in Supp. of Pl.'s TRO Appl. ("TRO Decls.") (Doc. No. 6).)

For instance, Defendants called the sister of Edie Abbott in March 2011 and attempted to collect a non-existent Chase credit card debt.  (Id. at 1.)  When Ms. Abbott returned Defendants' call, Defendants' representative demanded Ms. Abbott give her bank account information to begin repaying the debt and threatened that Ms. Abbott would be arrested if she did not comply.  (Id. at 2.)  Intimidated, Ms. Abbott agreed to make a payment and gave the representative her Master Card account number.  (Id.)  When Ms. Abbott received a letter from Defendants that contained no information about the dates and amounts of charges on the Chase credit card, she determined the company was not legitimate and closed the Master Card account.  (Id.)

In another instance, Defendants called Joshua Calhoun in February 2010 demanding he verify an H&R Block Emerald Card number for payment on a debt they claimed he owed.  (Id. at 26.)  Defendants' collector threatened to bring a lawsuit for $9,000.00 and to have Mr. Calhoun imprisoned if he did not give the information within one hour.  (Id.)  Mr. Calhoun requested to be transferred to the collector's supervisor.  (Id.)  The supervisor informed him that he had 30 minutes to decide "if he wanted to go to jail or not."  (Id. at 27.)  The supervisor did not respond to Mr. Calhoun's questions about the debt, and instead promptly hung up on him after confirming his card account number.  (Id.)  The following day, Mr. Calhoun discovered Defendant Pacific Management had withdrawn $1,000.00 from the H&R

Block Emerald card.  (Id.)  Mr. Calhoun claims he knows nothing of the $9,000.00 debt Defendants claimed he owed.  (Id. at 26.)

These declarations showed Defendants made false representations to consumers about non-existent debt.  Both Ms. Abbott and Mr. Calhoun, as well as many other consumers whose declarations are attached to the Supplemental Brief, relied on this deception to their detriment.  (Id. at 2, 27.)  Thus, Plaintiff's submissions in support of the preliminary injunction demonstrated a strong likelihood of success on the merits.

MINUTES FORM 11                                          Initials of Deputy Clerk __md__
CIVIL -- GEN                        Page 10

**Attachment A**

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

In ruling on Plaintiff's Motion for Preliminary Injunction, the Court also considered evidence Plaintiff gathered following the issuance of the TRO.  Plaintiff continued to investigate Defendants' business operations, and filed copies of documents recovered from Defendants' offices.  (See Mot. for PI Attachs. 1-22 (Doc. No. 25).)  These included scripts Defendants' collectors used to tell consumers that a lawsuit was pending against them for the alleged debt.  (See, e.g., Decl. of Ann Stahl ("Stahl Decl.") (Doc. No. 25) ¶¶ 8-15 (describing Attachments 2-5).)  Plaintiff's investigator, however, found no evidence that Defendants actually filed debt collection lawsuits against anyone.  (Id. ¶ 25.)  Thus, Defendants misrepresented to consumers that these lawsuits were pending, but nevertheless attempted to collect payments for the non-existent debts.

Based on the above legal standards and submitted evidence, the Court imposed the preliminary injunction.

**C.    Defendants' Proposed Modifications**
To modify the preliminary injunction, Defendants request the Court:
1)    Direct the Receiver to pay $150,000.00 to each of the Individual Defendants to be used to support themselves and their families, manage their business affairs, and for "any other lawful purpose";
2)    Direct the Receiver to pay the debt collectors working for Defendants, as of the time the TRO issued, commissions due for their collection work;
3)    Direct the Receiver to pay all debts and obligations of Defendants, including but not limited to, mortgage payments, car payments, credit card payments, vendor and contract payments;
4)    Order expedited discovery, expedited deadlines for dispositive motions, and an early trial date;
5)    Direct the Receiver to account for the fees and costs incurred since he took control of Defendants' personal and business accounts, and to provide itemized bills and invoices showing which bills have been paid. (Mot. at 2-5.)

**D.    Facts and Law Submitted in Support of Proposed Modifications**
Defendants do not argue in their Motion that the law supporting the issuance of the preliminary injunction has changed since the Court's Order on November 10,

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

2011.[2]  Thus, the Court turns to the facts Defendants argue support a modification of
the preliminary injunction.

### 1.    Purpose of Defendants' Multiple Business Entities

Defendants assert they did not set up separate business entities in order to
disguise the source of their earnings and shield themselves from liability.  (Mot. at 3.)
Instead, Defendants contend, their business expanded too rapidly, and the
increased  number of business entities, offices, and collectors necessitated
Defendants restructure the business through multiple bank accounts.  (Mot. at 4-5;
Begley Decl. ¶¶ 25-26.)  According to Defendants, the unfortunate result of their
business growth was an unwieldy organization, not an illegal cover-up of assets.
(Mot. at 4.)

Defendants claim they restructured their merchant accounts in June 2011 into
one entity, Portfolio Investment Financial, LLC ("PIF"), in order to comply with their
merchant account operator's request that the multiple bank accounts be
consolidated.  (Id. at 5 (citing Begley Decl. Ex. A-2).)  According to Defendants, their
collection entities collected payments in the name of PIF, paid the settlement
amounts into the PIF account, and then received money from PIF to pay salaries
and operating costs.  (Id. at 6.)  Defendants argue these payments and transfers
were transparent and there was no attempt to hide the money.  (Id.)  Given this

transparency, Defendants contend there is no need for the Receiver to exercise
complete control over their business.  (Id.)

Whether the payments and transfers were "transparent," however, has no
bearing on whether Defendants acquired these payments through illegal debt
collection.  Moreover, the Receiver's latest report contradicts Defendants' claim that
the transfers to PIF were transparent.  (See Receiver Report (Doc. No. 69) at 5.)
According to the Receiver's forensic analyst, funds collected from consumers would

---

[2] Indeed, the most recent citation in Defendants' Motion is a Ninth Circuit case
published in 2009.  (Mot. at 19 (citing Johnson v. Couturier, 572 F.3d 1067, 1085
(9th Cir. 2009)).)

**Attachment A**

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

be deposited into various "manager" entity accounts.  (Id.)  The funds were then transferred daily into PIF, and then immediately disbursed to Individual Defendants' personal and individual business accounts and their trust accounts.  (Id.)  According to the report, the disbursements paid directly to Defendants through this method exceeded $2 million.  (Id. at 6.)  Of this $2 million, Plaintiff asserts that $1.2 million is now missing from the accounts.  (Decl. of Maricela Segura ("Segura Decl.") (Doc. No. 68-5) ¶ 8.)  Defendants concede that approximately $787,000.00 of those funds were transferred to a firm called BryLaw for an investment in Brazilian bonds.  (See Segura Decl. Attach. 3.)  Thus, far from being "transparent," this structure enabled Individual Defendants to siphon off funds into their own personal accounts for dispersal to outside investments.

Defendants next claim that in 2011, Defendants again divided the business assets into separate bank accounts associated with new entities.  (Begley Decl. ¶ 35.)  Individual Defendants claim they created these entities to sell off pieces of their debt collection business, with the ultimate goal of leaving the retail debt collection business.  (Mot. at 7 (citing Begley Decl. ¶¶ 33-37).)  Again, whether or not Defendants planned to sell off their business has no relevance as to whether their debt collection was legal.

Thus, the Court finds Defendants' arguments and "new facts" concerning the purpose of their multiple business entities do not support a modification of the preliminary injunction.  There is also no reason why these facts could not have been presented earlier.

## 2.    Debt Collection Practices

Defendants submit declarations from 16 debt collectors, who deny involvement in illegal debt collection.  (Mot. at 7; Begley Decl. Ex. J.)  The debt collectors attest - in nearly identically-worded statements - that they did not claim to be lawyers, sheriffs, or process servers during calls to consumers.  (Mot. at 7.)

Mr. Begley also denies providing scripts to collectors instructing them to threaten consumers with arrest or suit.  (Id. at 8.)  Instead, he attests that Defendants required debt collectors to sign a contract promising to comply with "State and Federal Debt Collection Practices Acts."  (Id. at 8 (citing Begley Decl. ¶ 42, Ex. B).)  Individual Defendants also claim they met every month with the

**Attachment A**

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

managers to remind them to comply with the FDCPA.  (Id.)

Plaintiff notes, however, that Defendants do not attach any copies of scripts their collectors used that comply with the FDCPA.  (Opp'n at 2.)  Plaintiff also asserts its investigator only found noncompliant scripts in Defendants' offices and employee handbooks.  (Id. at 3.)

The Court does not find Defendants' declarations establish "new facts" which warrant a modification of the preliminary injunction.  All 16 of the collectors' declarations contain nearly identical statements denying knowledge of any illegal collection practices.  (See Begley Decl. Ex. J.)  The declarations end with the statement: "I am not an attorney but I believe that my attempts to collect debts were lawful."  (Id.)  The Court does not find these rote denials convincing, however, as Plaintiff's investigator has only found scripts which are not compliant with the FDCPA in searching Defendants' offices.  (Stahl Decl. (Doc. No. 68-1) ¶¶ 27-28.)  Additionally, declarations from Defendants merely asserting their own lack of liability to the underlying charges do not on their own constitute a significant change in the facts.  See Business Recovery Servs., 2011 WL 4915192, at *13-14.

Defendants next argue that Plaintiff's declarations are drawn from such a small percentage of Defendants' supposed "debtors" as to cast doubt on Defendants' ultimate liability.[3]  (Mot. at 8-10.)  This argument, however, does not address or raise new facts.  In issuing the preliminary injunction, the Court considered the consumer declarations Plaintiff submitted as a representative sample.  (See TRO Decls.)  The total amount of Defendants' assets, including the amount of debt collected through their businesses, $21,680,000.00, and the number of debtor accounts in their portfolio, 317,000, were detailed in the Receiver's report before the preliminary injunction and thus the Court considered this evidence during the hearing.  (First Receiver Report at 3.)  Thus, Defendants' statistical comparisons do not constitute

---

[3] Defendants claim Plaintiff submitted only 105 consumer complaints in support of the preliminary injunction.  (Mot. at 9 (citing Begley Decl. ¶¶ 11, 41).)  In fact, Plaintiff summarized 213 consumer complaints made to the FTC in its application for the TRO.  (Opp'n at 5 (citing Gale Decl. (Doc. No. 7) ¶¶ 4-12).)

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

new facts.[4]

Finally, Mr. Begley asserts that "many" consumers expressed thanks to Defendants for settling their debts.  (Mot. at 9; Begley Decl. ¶ 39.)  This fact has no relevance as to whether Defendants illegally collected debt.  Unfortunately, if Plaintiff's allegations prove true, many consumers may have diligently paid back debt they did not owe.  Their thanksgiving at receiving "paid in full" letters for nonexistent debts merely underscores the potentially unjust results of Defendants' alleged fraud.

### 3.    Charge Back Rate

Defendants argue that the low "charge back" rate on the installment plans Defendants negotiated with consumers is evidence that Defendants' debt collection was mostly legitimate.  (Mot. at 9; Begley Decl. ¶ 9.)  Although the Court did not consider the charge back rate in ruling on the preliminary injunction, the Court does not find this fact relevant.  A low charge back rate only shows that once consumers agreed to pay the purported debt to Defendants, the majority of them did not cancel the ensuing charges on their credit or debit cards.  This fact has no significance as to whether Defendants collected the purported debt legally.

### 4.    Receiver's Management of Defendants' Assets

Defendants next urge the Court to modify the preliminary injunction to limit the Receiver's role.  Defendants argue the Receiver has failed to pay rents and utilities, failed to renegotiate leases, and ignored vendor contracts, essentially running their business aground.  (Mot. at 12.)  Defendants also claim the Receiver

--------------------

[4] Plaintiff notes that a select group of consumer complaints alleging violations are often representative of a much larger number of actual violations.  (Opp'n at 4 (citing In re Nat'l Credit Mgt. Grp., 21 F. Supp. 2d 424, 442 n.31 (D.N.J. 1998)).) Plaintiff also points out rightly that even if many consumers did not file complaints, this does not prove Defendants lawfully collected debt from these consumers; it only proves these consumers did not file complaints with consumer protection agencies. (Id.)

**Attachment A**

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

misrepresented that there were "inadequate funds to pay" commissions Defendants
owed as of October 15, 2011.  (Id. at 13.)  According to Defendants, "Rincon-related
entities had on deposit . . . $1,079,000.00," which the Receiver should have used to
pay commissions.  (Id.)  Based on this, Defendants request the Court modify the
preliminary injunction to require the Receiver to meet Defendants' payment
obligations.  (Id.)

    The Court ordered the Receiver to take control of Defendants' business
operations and funds because the evidence showed a likelihood that Plaintiff would
prevail on its claims that Defendants operated an illegal debt collection business.
(See Mot. for PI Attachs. 1-22.)  As discussed above, Defendants' "new evidence"
does not undermine this conclusion.  (See supra III.D(1)-(3).)  Thus, the Court is not
persuaded that any new facts justify a modification of the Receiver's role in
controlling Defendants' businesses and assets.

    Moreover, Plaintiff presents several persuasive arguments as to why
Defendants should not be permitted to resume control of their business operations.[5]
(See Opp'n at 11-15.)  Notably, Defendants have not submitted a viable business
plan to the Receiver with FDCPA-compliant scripts.  (Segura Decl. ¶ 14; Receiver
Report at 2.)

    Plaintiff's counsel also states that Defendants failed to inform the Receiver
after the TRO issued about five additional entities they owned, including County
Filing, Maple Filing, Rockwell Management and Statewide Associates.  (Segura
Decl. ¶ 3-5; see also Receiver Report at 3.)  Instead, according to Ms. Segura,
Defendants maintained that these entities did not belong to them.  (Id.)  After Plaintiff
began contacting the office managers of these additional entities, Plaintiff discovered
an unreported "theft" had resulted in the loss of all the office equipment in one of the
facilities.  (Id. ¶ 7.)  The FTC's investigator later observed that the offices of the other
entities also appeared to be cleared of equipment.  (Stahl Decl. ¶ 29.)

─────────────────

    [5] Plaintiff also notes that Defendants informed Plaintiff at a December 7, 2011,
meeting that they no longer desire to continue in the debt collection business.
(Segura Decl. ¶ 14; Receiver Report at 11.)

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

Finally, Plaintiff provides declarations made by Defendants revealing that Defendants transferred $787,000.00 from trust fund accounts to a firm called Brylaw for an investment in Brazilian bonds.  (Segura Decl. ¶ 10, Ex. 4.)  Plaintiff's declarations show Defendants not only failed to comply with the TRO, but actively worked to thwart the Receiver's control of their assets.  The Court therefore does not find a modification of the Receiver's role justified.

In sum, the new evidence and arguments in Defendants' Motion are an ill-disguised attempt to avoid addressing the content of Plaintiff's consumer declarations.  (See, e.g., Begley Decl. Ex. A3.)  The Court issued the preliminary injunction after reviewing dozens of consumer declarations which portrayed a predatory operation through which Defendants illegally collected nonexistent debt.  (See generally Gale Decl. ¶¶ 4-12; TRO Decls.)  No "new facts" controvert the evidence leading the Court to issue the preliminary injunction, and therefore no modification is justified.

## E.    Personal Expenses

In their Opposition to the preliminary injunction, Defendants requested the Court release funds from the asset freeze so that Defendants could pay their reasonable living expenses, attorneys' fees, and business expenses.  (Opp'n to PI at 6.)  Defendants did not, however, attach any documentation outlining Defendants' living expenses or attorneys' fees.  In this Motion, Defendants again request the Court direct the Receiver to release $150,000.00 to each Individual Defendant to "support themselves and their families, to manage their business affairs . . . , and for any other lawful purpose."[6]  (Mot. at 2.)

---

[6] Plaintiff notes in its Opposition that the it has been releasing funds for Defendants' living expenses from the asset freeze, and is currently in discussion with Defendants for a release of funds for their living expenses for the month of January 2012.  (Opp'n at 9; Segura Decl. ¶¶ 12-13; Receiver Report at 16.)  Plaintiff asserts it released funds to Defendants to pay their property taxes, mortgages, insurance, reasonable car payment, health insurance, and provided Defendants with a food and household expense allowance.  (Id. at 10 (citing Segura Decl. ¶ 12).)

(continued...)

MINUTES FORM 11                                          Initials of Deputy Clerk __md__
CIVIL -- GEN                         Page 17

**Attachment A**

EDCV 11-01623 VAP (SPx)
FEDERAL TRADE COMMISSION v. RINCON MANAGEMENT SERVICES, LLC, et al.
MINUTE ORDER of January 31, 2012

In its  ruling on the preliminary injunction, the Court found Defendants presented a legitimate concern about the breadth of Plaintiff's proposed asset freeze.  The Court further agreed that Individual Defendants must still have access to sufficient funds to provide for reasonable living expenses for themselves and any dependants.[7]  The Court also noted the preliminary injunction did not provide an allocation for living expenses.  As Defendants did not provide the Court with any information detailing their reasonable and necessary living expenses, however, the Court overruled their objection without prejudice, and allowed Defendants to submit an application seeking a reasonable and necessary living allowance, based upon a detailed showing of their expenses.

Defendants never submitted this application, nor does their Motion provide any information detailing Individual Defendants' living expenses.  Thus, the Court denies a modification of the preliminary injunction to provide for living expenses.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion.

**IT IS SO ORDERED.**

_____

[6](...continued)
The attachments to Ms. Segura's declaration show the FTC based the release of funds for living expenses on receipts and bills Defendants provided.  (Segura Decl. Attach. 5.)  Plaintiff also requested Defendants provide documentation to support their request on December 22, 2011, for $150,000.00 for each Individual Defendant's living expenses.  (Id. ¶ 13.)  Defendants do not provide any evidence showing they responded to this request.

[7] The TRO allowed Individual Defendants to withdraw up to $1,500.00 from their personal bank accounts during the TRO's pendency.  (TRO at 10.)