# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Federal Trade Commission**, | No. 8:20-CV-00287 JVS (KESx) |
| Plaintiff, | **Preliminary Injunction** |
| vs. | |
| **OTA Franchise Corporation**, et al., | |
| Defendants. | |

Plaintiff, the Federal Trade Commission ("FTC"), has filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Consumer Review Fairness Act of 2016 ("CRFA"), 15 U.S.C. § 45b.  Dkt. No. 1.  On February 12, 2020, the FTC applied for a temporary restraining order ("TRO"), asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Defendants OTA Franchise Corporation, Newport Exchange Holdings, Inc., NEH Services, Inc., Eyal Shachar, Samuel R. Seiden, and Darren Kimoto.  Dkt. No. 12.  Defendants opposed the application.  Dkt. No. 37.

The Court granted the TRO on February 25, 2020, requiring Defendants to cease their allegedly deceptive marketing and Consumer Review Fairness Act

1

violations, freezing the Corporate Defendants' assets, and preventing dissipation of the Individual Defendants' assets.  Dkt. No. 46.  The TRO directed Defendants to appear on March 12, 2020 to show cause why a preliminary injunction should not issue against them.  Defendants subsequently filed, with leave of court, additional objections to issuance of a TRO, based on the First Amendment.  Dkt. No. 52.  The FTC responded to the Objections.  Dkt. No. 55.  Defendants replied.  Dkt. No. 57.  On March 6, 2020, the Court granted in part Defendants' *ex parte* application for clarification of the TRO and their request for permission to pay employees and collect money from consumers.  Dkt. No. 64.

Defendants filed their brief in response to the order to show cause why a preliminary injunction should not issue.  Dkt. No. 67.  The FTC filed a brief in further support of its application for a preliminary injunction.  Dkt. No. 74.  The Court held a show cause hearing on March 12, 2020.  On March 17, 2020, the Court granted in part the FTC's application for a preliminary injunction and ordered the FTC to file a modified proposed preliminary injunction that facilitates the appointment of an independent monitor to review Defendants' marketing claims and that reflects the modifications adopted by the Court at Docket Nos. 64 and 87.

## FINDINGS

The Court, having considered the Complaint, declarations, exhibits, memoranda, and argument presented, finds that:

A.      This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper.

B.      The FTC has sufficiently demonstrated that Defendants, in marketing and selling trading and investing training programs, instructional materials, and related goods and services, have made false or unsubstantiated representations that consumers who purchase Defendants' programs will likely earn substantial income,

any consumer can learn and use Defendants' strategy to earn income without significant investable capital or free time, and Defendants' instructors have amassed substantial wealth by trading in the financial markets.

C.     The FTC has sufficiently demonstrated that the Corporate Defendants and Defendant Eyal Shachar have used standardized refund agreements to inhibit customers' ability to post negative reviews about Defendants and their services or communicate with law enforcement agencies and others about Defendants and their services.

D.     There is good cause to believe that Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), that the Corporate Defendants and Defendant Shachar have engaged in and are likely to engage in acts or practices that violate the CRFA, 15 U.S.C. § 45b, and that Plaintiff is therefore likely to prevail on the merits of this action.

E.     As demonstrated by documentation of Defendants' advertisements and live sales events, documents and information provided by Defendants, testimony and declarations from Defendants' former employees, consumer declarations, data regarding the trading performance of Defendants' customers, data regarding the loan repayment of Defendants' customers, and the additional documentation filed by the FTC, the FTC has established a likelihood of success in showing that Defendants have: (1) made false or unsubstantiated claims regarding consumers' ability to earn substantial income, including consumers' ability to do so even if they lacked significant time or investable capital; and (2) used standardized contract provisions that unlawfully inhibit customers' ability to review and share information about Defendants and their services with law enforcement agencies and others.

F.     This Order, which restricts Defendants from making misleading claims, is not an improper prior restraint on speech.

3

G.     The FTC has sufficiently demonstrated that Corporate Defendants are a common enterprise.  The Corporate Defendants are commonly owned and controlled by Defendant Eyal Shachar and share office space.  They also intermingle finances and operate for a common purpose.  The FTC has established a likelihood of success in showing that the Corporate Defendants should be held liable for each others' deceptive acts and practices.

H.     The FTC has sufficiently demonstrated that that the Individual Defendants controlled the Corporate Defendants, directly participated in their deceptive conduct, and had knowledge of or at least were recklessly indifferent as to wrongdoing.

I.     There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of the FTC Act and the CRFA unless Defendants are restrained and enjoined by order of this Court.

J.     There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers – including monetary restitution, rescission, disgorgement, or refunds –will occur from the sale, transfer, destruction, or other disposition or concealment by Defendants of their assets or records, unless Defendants are immediately restrained and enjoined by order of this Court.

K.     Good cause exists for appointing an independent monitor over the Monitored Entities, freezing the Corporate Defendants' assets, requiring preservation of the Individual Defendants' assets, and permitting the Plaintiff and the Monitor to take expedited discovery.

L.     Weighing the equities and considering Plaintiff's likelihood of ultimate success on the merits, a preliminary injunction with an asset freeze, the appointment of a monitor, expedited discovery, and other equitable relief is in the public interest.

M.     This Court has authority to issue this Order pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b); Federal Rule of Civil Procedure 65; and the All Writs Act, 28 U.S.C. § 1651.

N.     No security is required of any agency of the United States for the issuance of a preliminary injunction. Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A.     "**Corporate Defendant(s)**" means OTA Franchise Corporation (also doing business as Online Trading Academy), Newport Exchange Holdings, Inc. (also doing business as Online Trading Academy), NEH Services, Inc. (also doing business as Online Trading Academy), and each of their subsidiaries, affiliates, successors, and assigns.

B.     "**Covered Communication**" means a written, oral, or pictorial review, performance assessment, or other similar analysis of goods, services, or conduct.

C.     "**Defendant(s)**" means the Corporate Defendants and the Individual Defendants, individually, collectively, or in any combination.

D.     "**Document**" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail, chats, and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone or videoconference logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and

1  other data or data compilations from which information can be obtained directly or,
2  if necessary, after translation into a reasonably usable form.  A draft or non-
3  identical copy is a separate document within the meaning of the term.

4      E.    "**Earnings Claim**" means any representation to consumers, specific
5  or general, about income, financial gains, percentage gains, profit, net profit, gross
6  profit, or return on investment.  Earnings Claims include, but are not limited to: (a)
7  the details of specific profitable trades, whether actual or hypothetical; (b)
8  references to quitting one's job, not having to work, or living off of income from
9  trading; (c) references to increased purchases or savings, including a home,
10  vacations, or travel; (d) claims that consumers will not lose money if they use a
11  particular trading strategy; (e) claims that profits are likely, probable, or the
12  "mathematical" result of applying a particular trading strategy; and (f) any
13  representation, even hypothetical, of how much money a consumer could or would
14  earn.

15      F.    "**Electronic Data Host**" means any person or entity in the business of
16  storing, hosting, or otherwise maintaining electronically stored information. This
17  includes, but is not limited to, any entity hosting a website or server, and any entity
18  providing "cloud based" electronic storage.

19      G.    "**Individual Defendant(s)**" means Eyal Shachar (also known as Eyal
20  Shahar), Samuel R. Seiden, and Darren Kimoto, individually, collectively, or in
21  any combination.

22      H.    "**Monitor**" means the monitor appointed in Section XII of this Order
23  and any deputy monitors that shall be named by the monitor.

24      I.    "**Monitored Entities**" means the Corporate Defendants as well as any
25  other entity that the Monitor determines is controlled or owned by any Corporate
26  Defendant or Eyal Shachar and (1) conducted any business related to Defendants'
27  advertising, marketing, distributing, promoting, or selling of trading or investing
28  training programs, (2) commingled or pooled assets with any Corporate Defendant,

6

or (3) otherwise participated in the transfer of assets stemming from the advertising, marketing, distributing, promoting, or selling of trading or investing training programs.

J.　　"**Review-Limiting Contract Term**" means a standardized contract term that: prohibits or restricts the ability of a person who is a party to the contract to engage in a Covered Communication; imposes a penalty or fee against a person who is a party to the contract for engaging in a Covered Communication; or transfers, or requires a person who is a party to the contract to transfer, to any other person any intellectual property rights in a Covered Communication, with the exception of a non-exclusive license to lawfully use a Covered Communication about a Defendant's goods or services.

**ORDER**

**I.　　PROHIBITED BUSINESS ACTIVITIES**

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods or services, are preliminarily restrained and enjoined from:

A.　　Making any Earnings Claim, expressly or by implication, unless the Earnings Claim is non-misleading, and, at the time such claim is made, Defendants: (1) have a reasonable basis for the claim; (2) have in their possession written materials that substantiate that the claimed earnings are typical for consumers similarly situated to those to whom the claim is made; and (3) make the written substantiation available upon request to the consumer, potential purchaser, the Monitor, or the FTC;

B.　　Making any claim, expressly or by implication, about (1) the time or effort typically required for consumers to attain proficiency in deploying

7

Defendants' trading strategy; (2) the time or effort typically expended by consumers using Defendants' trading strategy to achieve substantial income; or (3) the amount of capital typically needed by consumers using Defendants' trading strategy, unless the claim is non-misleading, and, at the time such claim is made, Defendants: (a) have a reasonable basis for the claim; (b) have in their possession written materials that substantiate that the claim is typical for consumers similarly situated to those to whom the claim is made; and (c) make the written substantiation available upon request to the consumer, potential purchaser, the Monitor, or the FTC.

C.      Misrepresenting or assisting others in misrepresenting, expressly or by implication, that instructors of Defendants' trading strategy are active traders who have amassed substantial wealth through trading in financial markets; and

D.      Misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact to consumers concerning any good or service, including, but not limited to: the total cost; any refund policy; any material restriction, limitation, or condition; or any material aspect of its performance, efficacy, nature, or central characteristics.

## II.      PROHIBITION ON RESTRICTION OF CONSUMERS' SPEECH

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods or services, are preliminarily restrained and enjoined from:

A.      Offering, attempting to enforce, or asserting the validity of, any Review-Limiting Contract Term; and

B.      Including in a contract any provision that (a) prohibits or restricts the ability of any person who is a party to the contract to communicate, in any way,

with the Commission or any other law enforcement entity, or (b) imposes a penalty or fee against any person for communicating, in any way, with the Commission or any other law enforcement entity.

## III.   PROHIBITION ON COLLECTION OF LOAN PAYMENTS

**IT IS FURTHER ORDERED** that for any loan owned by any Corporate Defendant which was issued to a purchaser of Defendants' trading or investing training programs prior to the date of entry of this Order, Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are preliminarily restrained and enjoined from:

A.   Attempting to collect or collecting past due loan payments through a collection agency;

B.   Levying or assessing any penalties, such as late fees, for non-payment or late payment;

C.   Levying or assessing any interest beyond the amount that would be due if all loan payments due after this Order were made as scheduled;

D.   Referring, selling, assigning, or otherwise transferring such loans; and

E.   Reporting negative information to a consumer reporting agency that assembles or evaluates consumer credit information for the purpose of furnishing reports to third parties.

Provided, however, that this Section does not bar receipt of payments voluntarily submitted by consumers (including consumers who purchased Defendants' trading or investing training programs prior to the date of entry of this Order), including payments submitted via pre-arranged electronic funds transfer or like method of payment.  Such payments received from consumers are subject to the asset freeze provisions of Sections VII and VIII.

**IV.    PROHIBITION ON RELEASE OF CUSTOMER INFORMATION**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order.

Provided, however, that Defendants may disclose such identifying information to

(1) a law enforcement agency, to their attorneys as required for their defense, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

(2) companies that provide services to Corporate Defendants related to trading or investing training programs, to the extent that such persons have provided written consent for their identifying information to be provided to such companies. Such written consent will not be valid for purposes of this Order unless Corporate Defendants have identified to the person the name of the company that will receive the identifying information and the reason the information is being shared, prior to the person's execution of the written consent. Corporate Defendants must maintain such written consent for the duration of this Order.

## V.   PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.      Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to:  (1) the business, business practices, assets, or business or personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

B.      Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' assets.

## VI.   PRESERVATION OF INDIVIDUAL DEFENDANTS' ASSETS

**IT IS FURTHER ORDERED** that for the pendency of this Order, each Individual Defendant shall not, directly or indirectly, disburse, gift, spend, transfer, liquidate, or assign any assets obtained prior to entry of the TRO in this matter (Docket No. 46, issued February 25, 2020) beyond a cumulative amount of $25,000 (per Individual Defendant), as authorized by the TRO, until further Order of the Court.  Each Individual Defendant shall not, directly or indirectly, disburse, gift, spend, transfer, liquidate, or assign any assets obtained after this Order is entered that are derived from any activity that is prohibited by this Order.

## VII.  ASSET FREEZE OVER CORPORATE DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or

participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.     Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any assets, wherever located, including outside the United States, that are:

      1)     Owned or controlled, directly or indirectly, by any Corporate Defendant;

      2)     Held, in part or in whole, for the benefit of any Corporate Defendant;

      3)     In the actual or constructive possession of any Corporate Defendant; or

      4)     Owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Corporate Defendant.

B.     Opening or causing to be opened any safe deposit boxes titled in the name of any Corporate Defendant or subject to access by any Corporate Defendant; or

C.     Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Corporate Defendant other than in the ordinary course of business.  This includes any corporate bankcard or corporate credit card account for which any Corporate Defendant or Eyal Shachar is, or was on the date that this Order was signed, an authorized signor.

The assets affected by this Section shall include:  (1) all assets of the Corporate Defendants as of the time this Order is entered; and (2) assets obtained by the Corporate Defendants after this Order is entered if those assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order.

**VIII.  EXCEPTIONS TO THE ASSET FREEZE**

        **IT IS FURTHER ORDERED** that:

        A.    Corporate Defendants may collect money from consumers subject to the limitations of Section III of this Order, and, once received, the provisions of Sections VII and VIII;

        B.    Notwithstanding the provisions of Section VII, above, Corporate Defendants may:

            1)    Pay employees, other than Defendants, their usual current salaries;

            2)    Pay for the employer's share of health insurance benefits already in effect;

            3)    Pay the current rent on any facility regularly used in the ordinary course of business, unless the facility is owned, directly or indirectly, by any Defendant;

            4)    Pay the current monthly or other periodic payment paid to independent contractors who serve as regular instructors;

            5)    Pay utility payments incurred in the ordinary course of business; and

            6)    Pay for internet services or other reasonable and necessary purchases in the ordinary course of business.

            7)    To the extent not already authorized, Defendants may submit to the Court a list of vendors or individuals to seek prior approval and the basis therefor.

Provided, however, that no single or aggregate payment in any month to any single payee in categories 1) and 4) shall exceed $10,000 without the prior approval of the Court.  Defendants may submit to the Court a list of vendors or individuals to seek prior approval and the basis therefor.

No later than the 15th day of each month, Corporate Defendants shall file with the Court a list of payees and the amount of each payment authorized herein for the prior month.  An officer(s) of Corporate Defendants shall certify the accuracy of the report.

C. Notwithstanding the provisions of Section VII, above, Corporate Defendants may liquidate or sell assets subject to the following conditions:

    1) The asset must be sold via an arms-length, commercially reasonable transaction;

    2) Such sales may not include selling receivables to Universal Guardian Acceptance LLC that are derived from sales made by Corporate Defendants prior to the entry of the TRO entered on February 25, 2020, Docket No. 46;

    3) Sales of assets in the amount of $100,000 or greater, or sales of assets valued at $100,000 or greater, require prior approval of the Court; and

    4) Proceeds from the sales of any assets are subject to this Section and VII of this Order once received.

## IX.    DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) that (a) has held, controlled, or maintained

custody, through an account or otherwise, of any Document on behalf of any Defendant or any asset that has been: owned or controlled, directly or indirectly, by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; (b) has held, controlled, or maintained custody, through an account or otherwise, of any Document or asset associated with credits, debits, or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or (c) has extended credit to any Defendant, including through a credit card account, shall:

A.      Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, refund, chargeback, or other disposal of any such Document or asset of any Corporate Defendant, as well as all Documents or other property related to such assets, except by further order of this Court.

Provided, however, that this provision does not prohibit an Individual Defendant from incurring charges on a personal credit card established prior to entry of this Order, up to the pre-existing credit limit.

Provided further, however, that asset holders may release funds for payments authorized pursuant to Section VIII.  Before the asset holder releases any funds, an officer of Corporate Defendants shall certify in writing to the entity releasing funds the amount to be released and that such assets will be used to make payments authorized by the Court.  Defendants shall provide a copy of the certification to the

FTC at the same time it is provided to the asset holder. If any asset holder contests or otherwise fails so honor a Corporate Defendant's certificate, the Corporate Defendant may apply ex parte to the Court for relief

B.      Deny any person access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Corporate Defendant, either individually or jointly, or otherwise subject to access by any Corporate Defendant;

C.      Provide FTC counsel, within three (3) days of receiving a copy of this Order, a sworn statement setting forth, for each asset or account covered by this Section:

> 1)      The identification number of each such account or asset;
>
> 2)      The balance of each such account, or a description of the nature and value of each such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted;
>
> 3)      The identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant; and

D.      Upon the request of FTC counsel, promptly provide FTC counsel with copies of all records or other Documents pertaining to each account or asset covered by this Section, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and

all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

**X.    FINANCIAL DISCLOSURES**

**IT IS FURTHER ORDERED** that each Defendant that has not provided complete financial disclosures pursuant to the TRO entered on February 25, 2020, Docket No. 46, within five (5) days of service of this Order upon them, shall prepare and deliver to Plaintiff's counsel:

A.    Completed financial statements on the forms attached to this Order as **Attachment A** (Financial Statement of Individual Defendant) for each Individual Defendant, and **Attachment B** (Financial Statement of Corporate Defendant) for each Corporate Defendant; and

B.    Completed **Attachment C** (IRS Form 4506, Request for Copy of a Tax Return) for each Corporate Defendant.

**XI.    RECORDING OF LIVE SALES EVENTS BY DEFENDANTS**

**IT IS FURTHER ORDERED** that Corporate Defendants and their officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them, in connection with the advertising, marketing, promoting, or offering for sale of trading or investing training programs, shall:

A.    Record all of Corporate Defendants' live sales events, including, but not limited to, the Market Timing Preview, the Power Trading Workshop, and the Market Timing Orientation;

B.    Ensure all multi-day live sales events, including, but not limited to, the Market Timing Orientation, that are held at or operated by franchisee-owned training centers located within the United States are recorded and that such recordings are provided to Corporate Defendants; and

C.    Retain copies of all recordings of live sales events made pursuant to this Section for the duration of this Order.

Provided that the creation of a single recording of the entirety of each live sales event, and the maintenance of all such recordings by Corporate Defendants or their agents, shall suffice for full compliance with this Section.

**XII.   APPOINTMENT OF MONITOR**

**IT IS FURTHER ORDERED** that Thomas McNamara is appointed as monitor of the Monitored Entities.  The Monitor shall be accountable directly to this Court.

**XIII.  DUTIES AND AUTHORITY OF THE MONITOR**

**IT IS FURTHER ORDERED** that the Monitor shall have the following duties and authority:

    A.   Monitor the Monitored Entities' compliance with this Order, including by:

        1)   Ensuring that the Monitored Entities record live sales events as described in Section XI of this Order;

        2)   Identifying and reviewing the Monitored Entities' marketing materials and other Documents that reflect the Monitored Entities' marketing, advertising, promotion, offer for sale, or sale of their trading or investing training programs, including, but not limited to, radio ads, television ads, direct mail, email, search engine advertising, Internet banner advertisements, websites, online videos, webinars, social media, live sales events, recordings of live sales events, including recordings of franchisee-owned training centers' events, handouts, slide decks, workbooks, telephone calls (both live and recorded), call logs, call detail records, and reports.  The Monitor will determine the number of live sales events, recordings of live sales events, and calls to review;

    B.   The Monitor shall have immediate, unfettered access to:

1    1)    All information or Documents the Monitor deems necessary or
2            appropriate to carrying out the Monitor's duties pursuant to this
3            Order;

4    2)    Access to all property or premises in possession of, owned by,
5            or under the control of the Monitored Entities related to the
6            marketing, advertising, promotion, offer for sale, or sale of their
7            trading or investing training programs, wherever located.

8    3)    The right to copy or image any and all Documents as the
9            Monitor deems necessary or appropriate to carrying out the
10           Monitor's duties pursuant to this Order, including any
11           Documents in the custody, or control of Individual Defendants;

12    4)    The right to interview any current or former employee,
13           independent contractor, principal, owner, manager, member, or
14           other person affiliated with the Monitored Entities, including
15           Individual Defendants, to obtain and copy pertinent
16           information;

17    5)    The right to interview any Monitored Entity's current or former
18           officer, manager, independent contractor, subcontractor,
19           financial institution, vendor, telecommunications provider,
20           agent, service bureau, or other entity involved in the provision
21           of any services from, to, or on behalf of the Monitored Entities,
22           including Individual Defendants, to obtain and copy pertinent
23           information; and

24    6)    The right to request that the Plaintiff issue subpoenas to obtain
25           Documents and records pertaining to the Monitored Entities,
26           and the right to request the Plaintiff to conduct discovery
27           necessary or appropriate for the Monitor to carry out the
28           Monitor's duties pursuant to this Order.

19

C.      The Monitor is authorized to choose, engage, and employ attorneys, investigators, and other independent contractors and technical specialists, as the Monitor deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order.

D.      Upon determining that a nonparty entity is a Monitored Entity, the Monitor shall promptly notify the entity as well as the parties, and shall inform the entity that it can challenge the Monitor's determination by filing a motion with the Court;

E.      The Monitor shall report to the Court on the Monitored Entities' compliance with this Order.  The Monitor shall make its first report within thirty (30) days of entry of this Order.  The Monitor shall make each subsequent report every thirty (30) days for the duration of this Order;

F.      The Monitor may apply to the Court for any relief necessary or appropriate to ensure the Monitor can carry out his duties; and

G.      If, at any time, the Monitor determines that the Monitored Entities are not in substantial compliance with this Order, the Monitor shall notify the Court immediately.

## XIV.  PROVISION OF INFORMATION TO THE MONITOR

**IT IS FURTHER ORDERED** that Defendants shall provide to the Monitor, immediately upon request, without need of any subpoena or further order, the following:

A.      A list of all Documents pertaining to the Monitored Entities' Earnings Claims and other representations related to the marketing, advertising, promotion, offer for sale, or sale of their trading or investing training programs, including any such Documents belonging to other persons or entities whose interests are under the direction, custody, or control, or in the possession, of the Monitored Entities;

B.     A list of all locations where Documents of the Monitored Entities are located, and the means to access such Documents within twenty-four (24) hours of the Monitor's request; and

C.     A list of all agents, employees, independent contractors, officers, attorneys, and those persons in active concert and participation with the Monitored Entities, or who have been associated or done business with the Monitored Entities since January 1, 2016 in connection with the marketing, advertising, promotion, offer for sale, or sale of their trading or investing training programs.

## XV.   COOPERATION WITH THE MONITOR

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them, and all other persons or entities served with a copy of this Order shall fully cooperate with and assist the Monitor.  This cooperation and assistance shall include, but is not limited to, providing information to the Monitor that the Monitor deems necessary or appropriate to exercise the authority and discharge the responsibilities of the Monitor under this Order.

## XVI.  NON-INTERFERENCE WITH THE MONITOR

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

A.     Interfering with the Monitor's efforts to carry out his duties under this Order, including but not limited to by interfering with the Monitor's efforts to review Documents or claims related to the Monitored Entities' marketing, advertising, promotion, offer for sale, or sale of their trading or investing training programs;

B.      Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any Documents of the Monitored Entities;

C.      Refusing to cooperate with the Monitor or the Monitor's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XVII. COMPENSATION OF THE MONITOR

**IT IS FURTHER ORDERED** that the Monitor and all personnel hired by the Monitor as herein authorized, including counsel to the Monitor and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Monitored Entities or otherwise frozen pursuant to this Order. The Monitor shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than thirty (30) days after the date of entry of this Order. The Monitor shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XVIII.      DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each franchisee, affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of themselves, and shall, within ten (10) days from the date of entry of this Order, provide Plaintiff and the Monitor with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the Order. Furthermore, Defendants shall not take any action that would encourage officers, agents, members, directors, employees,

salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns, franchisees, or other persons or entities in active concert or participation with any of them to disregard this Order or believe that they are not bound by its provisions.

## XIX.   LIMITED EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of the Fed. R. Civ. P. 26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Fed. R. Civ. P. 30(a), 33, 34, and 45, Plaintiff is granted leave, at any time after service of this Order, to conduct limited expedited discovery for the purpose of discovering:  (1) the nature, location, status, and extent of Defendants' assets; (2) compliance with this Order.  The limited expedited discovery set forth in this Section shall proceed as follows:

A.      Plaintiff may take the deposition of parties and non-parties.  Forty-eight (48) hours' notice shall be sufficient notice for such depositions.  The limitations and conditions set forth in Rules 30(a)(2)(B) and 31(a)(2)(B) of the Federal Rules of Civil Procedure regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section.  Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) and depositions may be taken by telephone or other remote electronic means;

B.      Plaintiff may serve upon parties requests for production of Documents or inspection that require production or inspection within five (5) days of service, provided, however, that three (3) days of notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only in an electronic format.

C.      Plaintiff may serve upon parties interrogatories that require response within five (5) days after Plaintiff serves such interrogatories;

D.     Plaintiff may serve subpoenas upon non-parties that direct production or inspection within five (5) days of service.

E.     Plaintiff may use all lawful means, including posing, through its representatives as consumers or other individuals or entities, to Defendants or any entity affiliated with Defendants, without the necessity of identification or prior notice;

F.     Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery.

G.     Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court.  The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) & (f) of the Federal Rules of Civil Procedure.

## XX.   SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order, as well as all other filings in this case (other than the complaint and summons), may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon any Defendant or any person (including any financial institution) that may have possession, custody or control of any asset or Document of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure.  For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## XXI.   CORRESPONDENCE AND SERVICE ON PLAINTIFF

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service of pleadings on Plaintiff shall be addressed to:

Thomas Biesty
Rhonda Perkins
Andrew Hudson
Federal Trade Commission
600 Pennsylvania Ave., NW
Mailstop CC-8528
Washington, DC 20580
Fax: 202-326-3395
Email: tbiesty@ftc.gov; rperkins@ftc.gov; ahudson@ftc.gov

## XXII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

Dated:  April 02, 2020, 12:53 p.m.

_____
**James V. Selna**
**United States District Judge**