Wayne W. Call, State Bar No. 56676
wcall@calljensen.com
Mark L. Eisenhut, State Bar No. 185039
meisenhut@calljensen.com
William P. Cole, State Bar No. 186772
wcole@calljensen.com
Chris C. Scheithauer, State Bar No. 184798
cscheithauer@calljensen.com
Samuel G. Brooks, State Bar No. 272107
sbrooks@calljensen.com
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA 92660
Tel: (949) 717-3000
Fax: (949) 717-3100

Robert Corn-Revere (Admitted Pro Hac Vice)
bobcornrevere@dwt.com
Ronald G. London (Admitted Pro Hac Vice)
ronnielondon@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Tel: (202) 973-4235
Fax: (202) 973-4425

Attorneys for Defendants OTA Franchise Corporation, Newport Exchange Holdings, Inc., NEH Services, Inc., Eyal Shachar, Samuel R. Seiden and Darren Kimoto

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Federal Trade Commission**,

Plaintiff,

vs.

**OTA Franchise Corporation**, et al.,

Defendants.

Case No. 8:20-cv-00287 JVS (KESx)

**DEFENDANTS' *EX PARTE* APPLICATION FOR APPROVAL TO PAY LITIGATION COSTS AND ATTORNEYS FEES TO CALL & JENSEN, DAVIS, WRIGHT TREMAINE, AND JEFFREY HARRIS FOR JANUARY AND FEBRUARY, 2020**



Complaint Filed: February 12, 2020
Trial Date: None Set

# TABLE OF CONTENTS


Page

I. INTRODUCTION .... 3

II. POINTS AND AUTHORITIES .... 4

A. Defendants Are Ordinarily Permitted to Pay Attorneys .... 4

B. Defendants Cannot Pay Attorneys or Litigation Costs from New or Exempt Funds .... 7

C. The Balance of Equities Requires that Defendants Be Permitted to Defend Themselves .... 8

1. The FTC has not established that it is likely to obtain an order of restitution, or that a restitution order will exceed available funds .... 9

2. The fees requested are reasonable .... 12

3. Defense counsel accepted the representation prior to the entry of the asset freeze .... 14

4. Defendants do not have access to alternative assets .... 15

III. CONCLUSION .... 15


CALL & JENSEN EST. 1981

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*AMG Capital Mgmt., LLC, et al. v. Federal Trade Commission*, No. 19-508 (petn. filed Dec. 3, 2019) .......... 9

*Babb v. Wilkie, _ U.S. _, No. 18-882*, 2020 WL 1668281 (Apr. 6, 2020) .......... 10

*CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766 (9th Cir. 1995).......... 7, 10

*Fed. Trade Comm'n v. AMG Capital Mgmt., LLC*, 910 F.3d 417 (9th Cir. 2018).......... 9

*Fed. Trade Comm'n v. Credit Buereau Center, LLC*, 937 F.3d 764 (7th Cir. 2019).......... 9

*Federal Trade Commission v. Credit Bureau Center, LLC*, No. 19-825 (petn. filed December 31, 2019) .......... 9

*FSLIC v. Dixon*, 835 F.2d 554 (5th Cir. 1987).......... 6, 7, 14

*FSLIC v. Ferm*, 909 F.2d 372 (9th Cir. 1990).......... 7, 8, 14

*FTC v. Digital Altitude, LLC*, No. CV18-00729-JAK-MRWx, 2018 WL 4944419 (July 26, 2018) .......... 6, 9

*FTC v. Johnson*, No. 2:10-cv-02203, 2015 WL 9243920 (D. Nev. Dec. 17, 2015) .......... 8

*FTC v. LoPinto*, No. CV-S-93-0561, 1994 U.S. Dist. LEXIS 21695, at *3-4 (D. Nev. Feb. 1, 1994) .......... 8

CALL & JENSEN EST. 1981

**TABLE OF AUTHORITIES (con't)**

Page

*FTC v. World Wide Factors, Ltd.*,
882 F.2d 344 (9th Cir. 1989)........................................................................6, 7, 8

*Rowland v. California Men's Colony, Unit II Men's Advisory Council*,
506 U.S. 194 (1993)...................................................................................................6

CALL & JENSEN EST. 1981

***EX PARTE* APPLICATION**

Pursuant to Section VIII.B.7. of the Court's Order of Preliminary Injunction (Dct. No. 130), Defendants hereby submit the following list of vendors or individuals for which they seek approval to make payments, and respectfully request the Court approve these vendors for payment on an ongoing basis. This request is supported by the accompanying memorandum of points and authorities, and the declarations of Mark L. Eisenhut, Robert Corn-Revere, Eyal Shachar, Sam Seiden, and Darren Kimoto establishing the basis for these payments. This application is made without prejudice to later requests for approval of other payments.

| Proposed Payee | Proposed Amount for Past Services Received |
|---|---|
| Call & Jensen APC | $220,991.26 |
| Davis Wright Tremaine LLP | $45,222.00 |
| Jeffrey Harris | $34,437.50 |

/ / /

/ / /

/ / /

CALL & JENSEN EST. 1981

**DECLARATION OF NOTICE**

The undersigned attorney advises the Court under oath that he notified counsel for Plaintiff (Thomas Biesty, Rhonda Perkins, and Andrew Hudson) by email on April 9, 2020, of this application and requested that they state whether the FTC intends to oppose the application. Thomas Biesty's address, telephone number, and email address are as follows: Federal Trade Commission, 600 Pennsylvania Ave., N.W., Mail Drop CC-8528, Washington, D.C. 20580; Direct: (202) 326-3043 | Fax: (202) 326-3395; tbiesty@ftc.gov.

Dated: April 9, 2020

CALL & JENSEN
A Professional Corporation
Wayne W. Call
Mark L. Eisenhut
William P. Cole
Chris C. Scheithauer
Samuel G. Brooks

By: */s/Samuel G. Brooks*
Samuel G. Brooks

Attorneys for Defendants OTA Franchise Corporation, Newport Exchange Holdings, Inc., NEH Services, Inc., Eyal Shachar, Samuel R. Seiden and Darren Kimoto

CALL & JENSEN EST. 1981

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On February 25, 2020, this Court issued a Temporary Restraining Order ("TRO") freezing Defendants' assets for 14 days. The TRO expired on March 10, 2020, but was renewed by the Court on March 12 for 5 additional days. The TRO was not renewed after it expired on March 17, and no injunction was in place until the Court issued the Preliminary Injunction ("PI") on April 2, 2020. Both Call & Jensen ("C&J") and Davis Wright Tremaine ("DWT") had funds in trust sufficient to cover Defendants' fees incurred as of that time, and nothing prevented them from drawing on those funds during the time period between the expiration of the TRO and the issuance of the PI. However, out of respect for and in deference to this Court, counsel did not do so. Rather, counsel waited to seek this Court's express approval for the payment of their fees.

This Court invited Defendants to "submit to the Court a list of vendors or individuals to seek prior approval and the basis therefor." (Dkt. 130, 13:26-28, 14:3-4) Defendants now seek explicit permission from this Court to pay C&J and DWT their out-of-pocket costs and reasonable attorney's fees incurred in January and February.[1] Defendants also request approval to pay expert witness Jeffrey Harris. We anticipate the Court has at all times intended to recognize Defendants' right to receive assistance from qualified counsel, and to approve the payment of costs and fees upon a determination that the requested fees are reasonable. However, because the FTC has argued Defendants should not be allowed to pay *any* fees, Defendants submit this relatively detailed memorandum of points and authorities to respond to the unreasonable position the FTC has previously taken, and which Defendants anticipate they will take in response to the present request.

[1] Additional applications will be made for later fees as necessary.



CALL & JENSEN EST. 1981

## II. POINTS AND AUTHORITIES

C&J has represented OTA and related entities and individuals for over fifteen years. [Declaration of Mark L. Eisenhut ("Eisenhut Dec.") ¶ 2]. While the FTC's Washington, DC office was investigating OTA, the Venable law firm in DC took the lead, with C&J intimately involved, including meeting with the FTC at its offices in DC long before this litigation commenced. [Eisenhut Dec. ¶ 2]. DWT has also represented OTA previously, and it joined the defense team in this case to lend its First Amendment expertise in February 2020, just as the California litigation was starting and prior to the issuance of the TRO. [Declaration of Robert Corn-Revere ("Corn-Revere Dec.") ¶ 2]. Both firms have appeared before this Court on behalf of Defendants, and neither has been paid for any costs or fees incurred for this case in 2020. [Eisenhut Dec. ¶ 3]. Defendants now request that the Court approve them to pay reasonable costs and attorney's fees incurred to C&J and DWT through February, 2020.

### A. Defendants Are Ordinarily Permitted to Pay Attorneys

OTA has successfully provided education to its students for more than 22 years. [ECF No. 37-5, Declaration of Eyal Shachar ¶ 4]. It has received numerous awards and recognition for being an outstanding corporate citizen and top-rated employer. [ECF No. 37-5, Declaration of Eyal Shachar ¶¶ 7-8]. Its students have consistently and overwhelmingly given it extremely high marks for delivering on its promises to them. [ECF No. 37-5, Declaration of Eyal Shachar ¶ 28]. In the approximately two weeks prior to briefing on the TRO and PI, nearly 10,000 of those students signed declarations and petitions in support of OTA. [ECF No. 37-5, Declaration of Eyal Shachar ¶ 22; ECF Nos. 37-6, 37-7, 37-8, 37-9, 37-10 (student declarations); ECF No. 67-7, Declaration of Mike Richardson ¶¶ 4-9; ECF Nos. 67-8, 67-9, 67-10, 67-11, 67-12, 67-13, 67-14, 67-15, 67-16, 67-17, 67-18 (declarations and petitions)]. To Defendants' knowledge, such an outpouring of customer support is unprecedented in an FTC enforcement case. It came as a complete shock to Defendants, their students, and the



CALL & JENSEN EST. 1981

undersigned counsel when, in spite of the overwhelming support of its students, this Court granted the FTC's request for a TRO which forced OTA to nearly completely shut down its nationwide educational operations by freezing all assets, forbidding all payments regardless of necessity or reason, and prohibiting collection of money owed. The Court later clarified the TRO based on its expressed intention to allow OTA to continue operating subject to limitations to prevent dissipation of assets, and with protections to ensure advertising and marketing is done lawfully, including the appointment of a monitor. The PI reflects these intentions. OTA has now met with the appointed monitor, is close to ready to re-start advertising and marketing in cooperation with the monitor, and anticipates it will begin generating new revenues in the near future. [Declaration of Eyal Shachar ¶ 5].

All of the equities weigh heavily in favor of allowing Defendants to have legal representation for the duration of this case. But if they are not allowed to pay for such representation using assets they obtained during their 22 years of operation prior to the PI, they will likely be left without representation, and their counsel—who have put in substantial time and effort to the exclusion of other opportunities—will be unfairly left without compensation. Such a result would be extremely unjust, and may preclude defendants from asserting their rights, including those accorded by the First Amendment. Moreover, without the ability to pay counsel, the PI's finding that the FTC is likely to succeed on the merits—which defendants vigorously contest—may become a self-fulfilling prophecy, as the FTC will have succeeded in shutting down Defendants' school without having to prove its case on the merits. This would not only be unfair, it would deny Defendants due process, as guaranteed by our adversary system of justice.

With respect to the Corporate Defendants, an order preventing them from securing counsel would be especially devastating. Because corporate entities cannot



represent themselves in court,[2] an order prohibiting the use of frozen assets to pay attorney's fees would ultimately result in them having to allow defaults to be taken. That cannot have been this Court's intent when it issued the PI. Indeed, although under certain limited circumstances courts may deny the use of frozen assets to pay attorneys, "the more common approach is to allow access to some portion of those assets to be used for specific needs of the defendant." *FTC v. Digital Altitude, LLC*, No. CV18-00729-JAK-MRWx, 2018 WL 4944419, at *6 (July 26, 2018). Even in cases where there is "considerable evidence" to support allegations of wrongdoing, "the court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves." *FSLIC v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987). Rather, in instances where a defendant cannot pay defense counsel from funds that are not subject to a freeze, "some allowance must be made" to permit the payment of defense fees from the frozen assets. *Id.* A district court may impose limits in certain circumstances, such as setting a cap on the total sum which may be withdrawn for the payment of fees, if warranted by findings of fact. *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 348 (9th Cir. 1989) (citing *Dixon*, 835 F.2d at 564-65). But except in the most extreme cases defendants should not be left without the ability to secure counsel for their defense.

Finally, the payment of attorney's fees is necessary to protect the First Amendment rights of the Defendants and their tens of thousands of satisfied students who have paid for lifetime access to Online Trading Academy's education services. As the Court is aware, Defendants have vigorously contested the FTC's interference with their right to deliver the clearly First Amendment-protected educational services to which these students are entitled. The FTC does not merely take issue with Defendants' advertisements—it wants to prevent the teaching of OTA's programs altogether. Defendants cannot assert their First Amendment rights, both before this Court and on



---

[2] "It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993).

appeal, without the assistance of lawyers. And lawyers will not assist them in asserting their rights without any expectation of payment. As a practical matter, denying Defendants the ability to contest what they reasonably believe is an infringement of their First Amendment rights by paying lawyers to represent them is tantamount to an absolute denial of those rights—a denial the First Amendment and Due Process do not permit.

**B. Defendants Cannot Pay Attorneys or Litigation Costs from New or Exempt Funds**

As set forth in *Dixon*, a defendant whose liability has not yet been determined must be permitted to use frozen assets for the payment of attorneys upon a showing that "he cannot pay them from new or exempt assets." 835 F.2d at 565.[3] Here, the Preliminary Injunction freezes *all* of Defendants' assets (including to counsel's understanding, funds held in trust by counsel), and none of the Defendants have sufficient new or exempt assets to pay for a defense. [Shachar Dec. ¶¶ 3-4; Declaration of Samuel Seiden ¶¶ 2-5, Declaration of Darren Kimoto ¶¶ 2-4].

Thus, Defendants cannot secure legal counsel without resort to the frozen assets. Some allowance should be made for them to use frozen assets for their defense. Of course, to the extent and when Defendants are able to obtain new assets that are not subject to the freeze and are not necessary to pay other expenses, they intend to use those assets to pay their attorneys before drawing on frozen assets. [Shachar Dec. ¶ 3].




[3] While *Dixon* is not binding authority, it has been cited with approval repeatedly by the Ninth Circuit. *See CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) ("Discretion must be exercised by the district court in light of the fact that wrongdoing is not yet proved when the application for attorney fees is made."); *FSLIC v. Ferm*, 909 F.2d 372, 374 (9th Cir. 1990); *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 348 (9th Cir. 1989).

### C. The Balance of Equities Requires that Defendants Be Permitted to Defend Themselves

In a previous filing, Plaintiff argued that district courts in the Ninth Circuit have considered five factors in determining whether to release frozen funds to pay legal fees. However, Plaintiff identified only one case from the District of Nevada which adopted this supposed five factor test,[4] and that case identifies no authority for it. *See FTC v. Johnson*, No. 2:10-cv-02203, 2015 WL 9243920, at *2 (D. Nev. Dec. 17, 2015). Indeed, Defendants are unaware of any binding authority adopting these five factors. For example, no binding authority permits a court to deny a defendant the right to a defense simply because its counsel allegedly was aware of the possibility that the court might deny or limit attorney fees when they agreed to the representation.[5] And even if that could be a basis for denying fees, neither C&J (which has represented OTA for over 15 years) nor DWT accepted the representation in this matter believing the Court would deny Defendants the right to pay costs or fees. Nor do any binding authorities support the proposition that a Court may preclude a defendant from mounting a defense if the Court preliminarily believes the FTC is likely to prevail on the merits.[6] Nevertheless, even if all of these factors are considered, the evidence confirms Defendants must be

---

[4] The factors proposed by the FTC are: (1) the likelihood that plaintiff will prevail on the merits, (2) the availability of assets for consumer redress, (3) the reasonableness of defendant's request, (4) whether defense counsel was aware of the possibility that the court might deny or limit attorney's fees, and (5) a defendant's access to alternative assets.

[5] Plaintiff offered one citation to a non-binding district court case, *FTC v. LoPinto*, No. CV-S-93-0561, 1994 U.S. Dist. LEXIS 21695, at *3-4 (D. Nev. Feb. 1, 1994). However, defense counsel has access to Westlaw, not Lexis-Nexis, and has been unable to find this case in the Westlaw database.

[6] Plaintiff previously cited *FSLIC v. Ferm*, 909 F.2d 372 (9th Cir. 1990), for this proposition, but nothing in the panel's opinion supports it. In fact, the district court in that case had not even issued an order preventing the defendant from using frozen assets to pay her attorneys. Rather, the district court's order permitted the defendant to use frozen assets to pay reasonable attorney's fees, and had merely been modified to require the attorneys to submit their invoices for *in camera* review to determine whether they were reasonable. *Ferm*, 909 F.2d at 373. The *Ferm* panel affirmed the order, holding that the *in camera* review ordered by the district court did not amount to a prejudgment of the merits of the lawsuit, and did not violate the attorney-client privilege. *Id.* It said nothing about the likelihood of either party's success on the merits.



permitted to defend themselves, including by using frozen assets to pay reasonable costs and attorney's fees as necessary.

**1. The FTC has not established that it is likely to obtain an order of restitution, or that a restitution order will exceed available funds**

As noted above, the binding authorities do not support the proposition that a district court may deny defendants the right to a defense simply because it determines that a government agency is likely to prevail on the merits of its complaint. Indeed, the government must establish a likelihood of prevailing on the merits in order to obtain an asset freeze in the first place, so if that were sufficient to deny the use of frozen assets to pay attorney's fees, then denying fee applications would be the rule rather than the exception. That cannot be the rule if "the more common approach is to allow access to some portion of those [frozen] assets to be used for specific needs of the defendant." *Digital Altitude, LLC*, 2018 WL 4944419, at *6.[7]

Rather, the first inquiry is whether using the frozen assets is likely to result in the dissipation of assets that are likely to be needed for the payment of restitution. *See*

---

[7] With respect to the FTC Act, the rule that currently permits district courts to freeze assets in order to preserve them for a potential restitution order may not be long for this world. The Supreme Court is currently set to consider whether to review a newly developed circuit split as to whether the FTC Act even permits the FTC to seek restitution as a remedy, or is instead limited to a permanent injunction. The first petition for certiorari arises from the Ninth Circuit in a case where Judges O'Scannlain and Bea have openly called for the overruling of the Ninth Circuit's "unfortunate interpretation of the Federal Trade Commission Act." *Fed. Trade Comm'n v. AMG Capital Mgmt., LLC*, 910 F.3d 417, 429 (9th Cir. 2018) (O'Scannlain, J., specially concurring); *see also AMG Capital Mgmt., LLC, et al. v. Federal Trade Commission*, No. 19-508 (petn. filed Dec. 3, 2019). The other case arises from the Seventh Circuit, which last year overruled its decades-old precedent which had interpreted the FTC Act to permit district courts to order restitution in spite of the statute's language limiting relief to a permanent injunction. *Fed. Trade Comm'n v. Credit Buereau Center, LLC*, 937 F.3d 764, 767 (7th Cir. 2019); *see also Federal Trade Commission v. Credit Bureau Center, LLC*, No. 19-825 (petn. filed December 31, 2019). According to the Court's docket, the petition in *AMG Capital Management* is now fully briefed, and the Supreme Court has requested a response to the petition in the *Credit Bureau Center*, which is due May 4, 2020. https://www.supremecourt.gov/docket/docketfiles/html/public/19-825.html. If the Supreme Court opts to hear one or both of these cases, Defendants are confident that it will confirm Judge O'Scannlain's observation that "the text and structure of the [FTC Act] statute unambiguously foreclose" monetary relief in the form of restitution. *AMG Capital Mgmt., LLC*, 910 F.3d at 429.



*Noble Metals Int'l*, 67 F.3d at 775. Yet even if the frozen assets fall short of the amount needed to satisfy a potential restitution order, the district court may not deny an application for attorney's fees where it would be unjust "in light of the fact that wrongdoing is not yet proved." *Id.* Here, regardless of the amount of frozen assets, denying the Defendants their right to counsel would be extremely unjust, especially where Corporate Defendants cannot represent themselves and if left without counsel would simply have to allow their defaults to be taken.

First, while the Court was persuaded that the FTC is likely to prove that a handful of Defendants' advertising claims and statements made during educational sales presentations were not sufficiently substantiated, and therefore violated the FTC Act, that is a far cry from a finding that the FTC is likely to obtain an order of restitution. Indeed, "restitution" could not possibly be justified for the vast majority of students who are fully satisfied and believe they received as much or more than what they were promised. [See ECF No. 37-5, Declaration of Eyal Shachar ¶ 22; ECF Nos. 37-6, 37-7, 37-8, 37-9, 37-10 (student declarations); ECF No. 67-7, Declaration of Mike Richardson ¶¶ 4-9; ECF Nos. 67-8, 67-9, 67-10, 67-11, 67-12, 67-13, 67-14, 67-15, 67-16, 67-17, 67-18 (declarations and petitions)]. Just a few days ago the Supreme Court confirmed that the issue of whether a defendant violated a federal statute is distinct from the issue of whether a plaintiff is entitled to a particular equitable remedy. *See Babb v. Wilkie*, _ U.S. _, No. 18-882, 2020 WL 1668281, at *3 (Apr. 6, 2020). In *Babb*, the Court explained that the plain meaning of language in the Age Discrimination in Employment Act of 1967—that "personnel actions" affecting individuals aged 40 and older "shall be made free from any discrimination based on age"—demands "that personnel actions be untainted by *any* consideration of age." *Id.* (emphasis added). This did not mean, however, that a protected employee who was subjected to a personnel action tainted by discrimination "may obtain all forms of relief that are generally available for a violation of §633a(a), including hiring, reinstatement, backpay, and

CALL & JENSEN EST. 1981

compensatory damages, without showing that a personnel action would have been different if age had not been taken into account." *Id.*

Similarly, even if the FTC were to prove that Defendants made one or more statements that violated the FTC Act, that would not automatically result in an order of restitution. Rather, the FTC would then have to carry its burden of proving that equity requires such a remedy, including that even though students are highly satisfied with OTA's education, they would not have enrolled in OTA but for the allegedly unsubstantiated statements.

The FTC has not yet made any effort to carry the burden of proving that equity requires full refunds for every student who ever purchased Online Trading Academy services, nor is it likely to do so. Indeed, the mountain of evidence before the Court is that Online Trading Academy customers value the education they have received, and by and large agree that they received, and continue to receive, as much or more than they paid for (students pay once, but receive lifelong benefits, including access to new tools such as the industry-changing CliK platform OTA developed for its students). [See ECF No. 37-5, Declaration of Eyal Shachar ¶ 22; ECF Nos. 37-6, 37-7, 37-8, 37-9, 37-10 (student declarations); ECF No. 67-7, Declaration of Mike Richardson ¶¶ 4-9; ECF Nos. 67-8, 67-9, 67-10, 67-11, 67-12, 67-13, 67-14, 67-15, 67-16, 67-17, 67-18 (declarations and petitions)]. Defendants are not fly-by-night peddlers of snake oil. On the contrary, Online Trading Academy is a legitimate decades-old business with tens of thousands of satisfied customers. Even if the trial in this matter results in a finding that Defendants violated the Act—an allegation that Defendants vehemently deny, and will vigorously defend against at trial—it is highly unlikely that restitution will be ordered. As such, the fact that the frozen assets are less than the total restitution the FTC might eventually seek cannot under the circumstances justify an order preventing Defendants from securing the assistance of qualified counsel.

CALL & JENSEN EST. 1981

Moreover, even if the Court were to assume (without evidence) the FTC is likely to prevail in obtaining an order of restitution, as a practical matter permitting the use of frozen assets for payment of attorney's fees will have very little effect on individual students. The FTC contends it will seek more than $362 million in restitution for more than 92,500 consumers. Assuming the FTC were to obtain an order of restitution for all of these individuals, Defendants could spend as much as $3 million on attorney's fees, and the reduction of each customer's potential reimbursement check would only be about $32. On the other hand, if Defendants are even only barely successful enough in their defense to remain in operation after trial, tens of thousands of students will retain their lifelong learning benefits, worth far more than the potential restitution costs. It would be extremely inequitable for the speculative interests of an unknown few consumers who may want a few extra dollars in a refund check to trump the interests of the tens of thousands of satisfied students who paid for and wish to keep their access to ongoing education. Nor should the highly uncertain specter of a potential restitution order outweigh Defendants' present interest in its right to a fair trial conducted by competent counsel.

**2. The fees requested are reasonable**

The attorney's fees requested by Defendants are eminently reasonable, both in terms of the rates and the time spent. The FTC's intent in this litigation is to altogether destroy the decades-old Online Trading Academy business—causing tens of thousands of satisfied students to lose their lifelong learning benefits, and hundreds of employees and contractors to lose their livelihoods—and to financially ruin the individual defendants. Given these high stakes, Defendants deserve highly competent and well-qualified counsel to handle their defense.

Call & Jensen is a prominent Southern California litigation firm with a well-deserved reputation for excellence in the Central District of California. [Eisenhut Dec. ¶ 5]. Co-lead counsel Mark Eisenhut and Wayne Call are particularly experienced trial

CALL & JENSEN EST. 1981

attorneys, and the other attorneys and staff assigned to this matter are all highly competent litigators as well. [Eisenhut Dec. ¶ 4]. If anything, the rates Call & Jensen agreed to accept for this representation are low for attorneys of similar quality and experience. [Eisenhut Dec. ¶ 5].

Likewise, Davis Wright Tremaine is a highly respected law firm with a national presence. [Corn-Revere Dec. ¶ 5]. And Robert Corn-Revere is one of the leading First Amendment lawyers in the nation. [Corn-Revere Dec. ¶ 5]. DWT's billable rates are competitive with other major law firms, and are thus reasonable by any measure. [Corn-Revere Dec. ¶ 5].

As for the reasonableness of the time spent by Defendants' attorneys on this matter, Defendants have lodged with the Court invoices for its review, redacted to avoid disclosure of attorney-client privileged communications and confidential work product. [Eisenhut Dec. ¶ 6, Exh. 1; Corn-Revere Dec. ¶ 6, Exh. 1]. As the invoices show, Defendants' attorneys have labored diligently to assist Defendants in responding to the FTC's highly aggressive litigation tactics, and to prepare this case for trial on an accelerated schedule. Mark Eisenhut, in particular, has dedicated more than full time hours to these efforts, having largely reassigned much of his responsibility for other cases to other attorneys. [Eisenhut Dec. ¶ 4]. The time spent by Defendants' attorneys thus far is well within the bounds of reasonableness, particularly in light of the high stakes at issue. Likewise, Defendants reasonably engaged an expert witness, Jeffrey Harris, to review and respond to the testimony of the FTC's expert, and his rates and time are well within the bounds of reasonably necessary litigation expenses. [Eisenhut Dec. ¶ 7, Exh. 2].

Going forward, Defendants request that the Court permit them to pay these attorneys' invoices and necessary litigation expenses in the ordinary course of business. There is no reason to believe Defendants' attorneys will incur excessive fees or expenses so as to require regular accountings to the Court of the fees incurred. Such

CALL & JENSEN EST. 1981

procedures are ordinarily reserved for matters where there is some evidence that assets are being funneled to attorneys for an improper purpose. *See, e.g.*, *Ferm*, 909 F.2d at 373 (FSLIC alleged firm was charging unreasonable fees and expenses); *Dixon*, 835 F.2d at 565 (directing district court to allow release of assets necessary to pay attorneys "unless FSLIC can carry the burden of demonstrating a likelihood of impropriety"). In the alternative, Defendants request the Court establish a procedure for such fees to be reviewed and approved by the Court on an expedited basis. For example, the Court could delegate this task to the assigned magistrate judge, with instructions to approve payment unless it is determined that fees are unreasonable in some particular.

**3. Defense counsel accepted the representation prior to the entry of the asset freeze**

Defendants strongly oppose the proposition that it would be proper to deny costs and fees based on the unsupported allegation that their attorneys accepted the representation knowing the Court might not permit them to be paid. C&J and DWT both believed they would be paid. C&J in particular has been engaged as OTA's counsel for more than 15 years, and it was engaged for more than a year on this particular matter before the FTC even filed suit. [Eisenhut Dec. ¶ 2]. DWT was also engaged before a TRO was issued. [Corn-Revere Dec. ¶ 2]. These attorneys have continued the representation in good faith, and have advocated zealously for their clients with the expectation that this Court would follow the "common approach" to such situations, and permit Defendants to pay what they owe for the attorneys' services.

And regardless of these facts, consideration of this supposed factor is not supported by any Ninth Circuit authority. The question is whether the balance of equities requires Defendants to be prevented from having access to counsel, and that inquiry has nothing to do with any risk Defendants' attorneys allegedly took in accepting their engagement. It should be sufficient to say that if Defendants are not permitted to pay their attorneys, their attorneys will have no choice but to withdraw



from the representation, as this matter is far too complex and work-intensive for any reasonable attorney to pursue *pro bono*.

**4. Defendants do not have access to alternative assets**

The final factor in the FTC's purported five-factor test asks whether the Defendants have access to alternative assets from which they could pay attorney's fees. As set forth above, Defendants clearly do not have access to any new or exempt assets. This factor strongly favors an order permitting Defendants to use frozen assets to pay their attorneys.

## III. CONCLUSION

For the reasons set forth above, Defendants respectfully request the Court approve their request to use frozen assets to pay the identified costs and attorney's fees incurred through February, and to either permit Defendants to pay their attorneys' invoices in the ordinary course of business, or provide for periodic review and approval of those invoices on an ongoing basis.

Dated: April 9, 2020

CALL & JENSEN
A Professional Corporation
Wayne W. Call
Mark L. Eisenhut
William P. Cole
Chris C. Scheithauer
Samuel G. Brooks

By: */s/Samuel G. Brooks*
Samuel G. Brooks

Attorneys for Defendants OTA Franchise Corporation, Newport Exchange Holdings, Inc., NEH Services, Inc., Eyal Shachar, Samuel R. Seiden and Darren Kimoto

