REDACTED VERSION OF DOCUMENT FILED UNDER SEAL
PER ORDER OF THE COURT DATED APRIL 14, 2020 (D.E. 155)

Thomas M. Biesty (NY Bar No. 4172896)
(202) 326-3043 / tbiesty@ftc.gov
Rhonda Perkins (VA Bar No. 75300)
(202) 326-3222 / rperkins@ftc.gov
Andrew Hudson (DC Bar No. 469817)
(202) 326-2213 / ahudson@ftc.gov
600 Pennsylvania Ave., NW, CC-8528
Washington, DC 20580

Local Counsel
John Jacobs (CA Bar No. 134154)
(310) 824-4300 / jjacobs@ftc.gov
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
(310) 824-4380 (fax)

Attorneys for Plaintiff
Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**Federal Trade Commission**,

Plaintiff,

vs.

**OTA Franchise Corporation**, et al.,

Defendants.

No. 8:20-CV-00287 JVS (KESx)

**Opposition to *Ex Parte* Application for Living Expenses**

# TABLE OF CONTENTS

Procedural History ....... 1

Argument ....... 3

I. Legal Standard ....... 3

II. Shachar Fails to Meet His Burden to Justify Release of Funds ....... 4

A. The FTC Is Likely to Prevail ....... 4

B. Consumer Injury Far Outstrips the Funds Available for Redress ....... 5

C. Shachar's Request Is Not Reasonable ....... 5

D. Shachar Makes No Attempt to Show He Lacks Alternative Means to Meet His Expenses ....... 10

III. Shachar's Other Arguments Lack Merit ....... 11

A. The Shachars Do Not Risk Foreclosure ....... 11

B. There Is No Tracing Requirement ....... 11

IV. Any Release Should Be Limited, and Restricted to Foreign Assets ....... 12

Conclusion ....... 13

## TABLE OF AUTHORITIES

Statutes and Rules

15 U.S.C. § 45(a) .................................................................................... 2
Local Rule 11-3.10 ..................................................................................7-8

Cases

*CFTC v. Noble Metals, Int'l, Inc.*, 67 F.3d 766 (9th Cir. 1995).................. 3, 5
*FSLIC v. Ferm*, 909 F.2d 372 (9th Cir. 1990) ............................................... 3
*FTC v. AMG Servs., Inc.*, No. 2:12-CV-00536, 2016 WL 1275612 (D. Nev. Mar. 31, 2016)............................................................................ 5
*FTC v. Bronson Partners, LLC*, 654 F.3d 359 (2d Cir. 2011)....................... 12
*FTC v. Commerce Planet*, 815 F.3d 592 (9th Cir. 2016) ................................ 5
*FTC v. Equifin Int'l, Inc.*, No. 97-CV-4526, 1997 U.S. Dist. LEXIS 10288 (C.D. Cal. July 31, 1997)........................................................................... 5
*FTC v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982) ............................... 3
*FTC v. J.K. Publ'ns, Inc.*, No. CV 99-00044, 2009 WL 997421 (C.D. Cal. Apr. 13, 2009)........................................................................ 12
*FTC v. Johnson*, No. 2:10-CV-02203, 2015 WL 9243920 (D. Nev. Dec. 17, 2015).......................................................................... 3
*Hawai'i v. Trump*, 871 F.3d 646 (9th Cir. 2017)............................................ 3
*Kemp v. Peterson*, 940 F.2d 110 (4th Cir. 1991) .......................................... 12
*SEC v. Banner Fund Int'l*, 211 F.3d 602 (D.C.Cir.2000)............................. 12
*SEC v. Bivona*, No. 16-CV-1386-EMC, 2016 WL 2996903 (N.D. Cal. May 25, 2016)........................................................................... 3
*SEC v. Current Fin. Servs.*, 62 F. Supp. 2d. 66 (D.D.C. 1999)..................... 12
*SEC v. ETS Payphones, Inc.*, 408 F. 3d 727 (11th Cir. 2005)....................... 12
*SEC v. Grossman*, 887 F.Supp. 649 (S.D.N.Y. 1995) .................................. 12
*Sharp v. Weston*, 233 F.3d 1166 (9th Cir. 2000)............................................ 3

Defendants have operated a deceptive scheme that uses false and unsubstantiated earnings and related claims to lure tens of thousands of consumers into paying hundreds, thousands, or tens of thousands of dollars for Defendants' investment training offerings ("OTA Training"), with serious consequences for consumers.[1] Over the last four years, Defendants took approximately $362 million from consumers,[2] a sizeable part of which—about $35 million just in the last two years—went to Eyal Shachar.[3] Indeed, Shachar's sizeable draw off the company's income has left it with debts exceeding its assets.[4]

This Court ordered Shachar to preserve his assets so as to preserve the possibility of redress to injured consumers. Dkt. 46; 130. In doing so, the Court exempted $25,000, allowing Shachar to spend or invest that amount as he saw fit. Less than two months later, Shachar now claims that sum is exhausted, and asks permission to spend down the limited pool of funds available for potential redress to fund nearly [REDACTED] per month in "necessary" living expenses for himself and over a dozen other people. This request is not supported by evidence showing that such a release is needed, and the request is facially unreasonable on multiple dimensions. The equities weigh firmly against the requested relief. Thus, the Court should deny or sharply limit any release of funds.

## PROCEDURAL HISTORY

The FTC has submitted overwhelming evidence that Defendants, operating under the name Online Trading Academy ("OTA"), have operated a deceptive scheme purporting to show consumers how to trade successfully in the financial

---

[1] *See e.g.*, EX 3 (consumer with limited ability to work due to medical conditions states "I cannot afford to pay for this, and I do not know what I am going to do.").

[2] For years 2016-2019, defendant OTA Franchise Corporation has generated nearly $362 million in revenues, net of refunds. *See* EX 88 (Dkt. 109), 57 (revenue figures totaling approximately $362 million), 84 (revenue figures are net of refunds).

[3] EX 88, 53 & 89.

[4] EX 61 (Corporate Defendants' liabilities exceed their assets).

markets. The evidence shows that Defendants have no support for the earnings and related claims they use to sell their "training," the claims are false, and Defendants have taken at least $362 million from consumers just over the last four years.

On February 25, 2020, the Court entered a Temporary Restraining Order ("TRO") (Dkt. 46) against Defendants, finding "good cause to believe that Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), … and that Plaintiff is therefore likely to prevail on the merits of this action." *Id*. at 2.

In the TRO, the Court further found "good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers—including monetary restitution, rescission, disgorgement, or refunds—will occur from the sale, transfer, destruction, or other disposition or concealment by Defendants of their assets or records, unless Defendants are immediately restrained and enjoined by order of this Court." *Id*. at 3. The Court instituted a freeze and preservation of Defendants' assets to maintain its ability to provide redress to injured consumers. *Id*. at 3, 10-11.

After further briefing and oral argument at the March 12, show-cause hearing, the Court entered a preliminary injunction ("PI") on April 2. Dkt. 130. The PI continues the asset freeze and preservation provisions of the TRO, with limited exceptions for the Corporate Defendants.

A week later, Shachar seeks *ex parte* relief authorizing him to pay [REDACTED] per month in "necessary" living expenses for himself, his spouse, their adult son, three elderly parents, and eight other unidentified persons [REDACTED] [REDACTED]. Shachar fails to meet his burden to show that such a release would be appropriate. The Court should deny or sharply limit any release.

## ARGUMENT

### I. Legal Standard

"A party seeking modification . . . of an injunction bears the burden of establishing that a significant change in facts or law warrants revision . . . of the injunction." *Hawai'i v. Trump*, 871 F.3d 646, 654 (9th Cir. 2017) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)). Where a defendant has not demonstrated a need for access to frozen funds, courts in the Ninth Circuit have denied their requests for living expenses. *See, e.g.*, *SEC v. Bivona*, No. 16-CV-01386-EMC, 2016 WL 2996903, at *3-4 (N.D. Cal. May 25, 2016) (denying motion to modify PI to unfreeze assets for living expenses where defendant did not demonstrate need).

Courts in the Ninth Circuit and elsewhere have "recognized the importance of preserving the integrity of disputed assets to ensure that such assets are not squandered by one party to the potential detriment of another." *FSLIC v. Ferm*, 909 F.2d 372, 374 (9th Cir. 1990). District courts in the Ninth Circuit have considered the following factors, individually and in various combinations, in determining whether to release frozen funds to pay living expenses: (1) the likelihood that plaintiff will prevail on the merits; (2) the availability of assets for consumer redress; (3) the reasonableness of defendant's request; and (4) a defendant's access to alternative assets. *See FTC v. Johnson*, No. 2:10-CV-02203, 2015 WL 9243920, at *2 (D. Nev. Dec. 17, 2015) (applying all factors); *CFTC v. Noble Metals, Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) (availability of assets for consumer redress); *Ferm*, 909 F.2d at 374 (likelihood of plaintiff's success on the merits and reasonableness of request).

Any release of funds must be limited to expenses that are both reasonable and necessary. *Noble Metals*, 67 F.3d 775, n.8; *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1111-12 (9th Cir. 1982).

## II. Shachar Fails to Meet His Burden to Justify Release of Funds

As shown below, all of the four factors commonly considered in ruling on requests to release frozen funds for living expenses weigh firmly against release of funds. Consequently, Defendant Shachar's request should be denied.

### A. The FTC Is Likely to Prevail

This Court has determined that the FTC is likely to prevail on the merits—a determination grounded firmly in the evidence. Dkt. 130, p. 2-4. Shachar does not argue otherwise.

The very fact of the application is further evidence that Defendants' "strategy" does not work as they claim. If it did, Shachar could have taken the $25,000 the Court exempted from preservation and used it, or some portion of it, to generate significant additional income.[5] This is all the more true in the current economic circumstances, as Defendants claim that the biggest trading profits are made by shorting the market as it is falling.[6] The past two months have provided ample opportunity for such trades.[7] Were Defendants' earnings claims true, one would have expected Shachar to employ the "strategy," leaving little need for additional funding by now.

[5] Defendants imply their "strategy" can yield high profits from small investments, in short periods of time. See Dkt. 32 (citing examples, including: a "plan" yielding $300/day from $5,000 of capital (EX 13, 5472); earn "100 grand a year" with only $5,000 to invest (EX 13, 4467-4471); earn "a 19 percent return in two weeks" (EX 13, 4826); and turn $3,000 into supporting a family in a year (EX 13, 2833-2841)).

[6] *See e.g.*, EX 13, 1373 ("we can make a lot of money on the way down … [y]ou make a lot of money really fast on the way down … [o]n the way down, you become wealthy"), 2290 (markets move faster going down, which "creates great ROR for me as a trader"), 2432 ("greater rate of return" when market goes down), 3452 ("you make [the] most money" when markets go down).

[7] *See, e.g.*, New York Times, *Grim Economic Outlook Grips Markets as Stocks Plummet*, March 16, 2020 (S&P 500 suffered "worst daily decline since October 1987"), available at https://www.nytimes.com/2020/03/16/business/stock-market-drops-recap.html (last visited April 13, 2020).

**B. Consumer Injury Far Outstrips the Funds Available for Redress**

When, as here, frozen assets amount to substantially less than the potential monetary liability, assets should remain frozen to preserve them for potential consumer redress.[8] Consumer harm is typically measured by the amount consumers paid Defendants minus refunds and chargebacks.[9] Based on Defendants' records, the FTC estimates consumer harm of close to $362 million.[10] The Corporate Defendants claim to have had less than $2 million in cash available at the time of the TRO,[11] and the Individual Defendants claim to have less than $35 million, the majority of which is in non-liquid assets (Dkt. 101-1). Together, this is approximately 10% of the estimated consumer harm. And the pool of preserved assets will be further reduced by liquidation costs, and business expenses authorized under the PI.[12]

**C. Shachar's Request Is Not Reasonable**

Shachar seeks permission to spend [REDACTED] per month, indefinitely, for a host of expenses for himself, his spouse, their adult son [REDACTED] [REDACTED] three elderly parents [REDACTED] and eight other people [REDACTED] [REDACTED] as well as [REDACTED]. His request is not reasonable, and is almost entirely unsupported by evidence.

---

[8] *CFTC v. Noble Metals, Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) (where frozen assets "fell far short" of consumer injury, court had "reason enough" to deny application). *See also FTC v. Equifin Int'l, Inc.*, No. 97-CV-4526, 1997 U.S. Dist. LEXIS 10288, *48-50 (C.D. Cal. July 31, 1997); *FTC v. AMG Servs., Inc.*, No. 2:12-CV-00536, 2016 WL 1275612, at *5–6 (D. Nev. Mar. 31, 2016).

[9] *See FTC v. Commerce Planet*, 815 F.3d 592, 603 (9th Cir. 2016).

[10] *See supra* footnote 2.

[11] EX 88, 66-67 (Defendants' CFO's testimony on cash holdings). The Corporate Defendants have less than $40 million in total assets, and this figure is exceeded by their total liabilities. EX 61.

[12] The Corporate Defendants have already begun spending frozen assets to pay employees for work done in February 2020. Declaration of Thomas Biesty, filed herewith. The FTC does not believe such payments for back-pay are authorized by the PI, and is considering whether it is necessary or appropriate to seek relief from the Court.

As an initial matter, there is no basis for using consumers' money to pay the expenses of working-age adults whose assets and income-generating abilities are not affected by this Court's orders.[13] Such a request is patently unreasonable.

Shachar's request is further unreasonable because he seeks to fund excessive, unnecessary payments, including for luxuries such as a [REDACTED] automobile, upkeep on the extensive [REDACTED], and a [REDACTED] The flagrantly unjustified nature of such requests warrants denial. And, as shown below, the evidence Shachar offers to support the claimed expenses is inadequate.

**1. Orit Shachar's [REDACTED]**

Shachar seeks [REDACTED] for his wife Orit. While the FTC would not oppose a limited release to pay for urgent, necessary [REDACTED] there is no showing that that is what this is. Shachar offers only [REDACTED] at that time. There is no evidence that [REDACTED]. Nor is there evidence that the [REDACTED]. In short, the evidence offered is greatly lacking.

**2. Care for Elderly Parents**

Shachar seeks [REDACTED] per month to pay for "care" for "three elderly parents" of Shachar and his spouse. Dkt. 138-2, p.3. This amount comprises [REDACTED] per month for "nursing home," [REDACTED] per month for food and [REDACTED] and [REDACTED] per month for a [REDACTED] Dkt. 138-2, p.28. In support, Shachar offers only a letter from [REDACTED] and documents in Hebrew (with no

[13] Shachar claims that eight of these people have essentially lived off of Shachar's charity for years. Perhaps that is so. But Shachar's charitable giving is not a necessary expense. These unidentified people have no right to live lives of leisure off money Shachar defrauded from consumers.

English translation) that Shachar claims are [14] FTC staff have consulted with an FTC staff member fluent in Hebrew regarding the documents. Based on that consultation, it is FTC staff's understanding that the . And, further, that they reflect charges for non-necessary items such as , as well as larger charges for It is not clear whether the If they do, release of additional funds to pay for those expenses is not necessary. Shachar provides no documentation to support the claimed per month in food and In sum, Shachar fails to meet his burden to show that expenses in the full amounts sought are necessary.

Orit Shachar alludes to a if the funds cannot be made available, but does not explain why, or what that would entail. While the FTC might not oppose a limited release for actually necessary expenses that exceed the assets and income of the Shachars' parents, there is no evidence that that is what this is.

**3. Living Expenses for Shachar's Adult Son**

Shachar requests a total of per month to support his adult son. This consists of .[15] But Shachar admits the expenses are unnecessary, offers no evidentiary support for any of the expenses, and double-counts the cost of .

---

[14] The Local Rules provide that documents "must be presented in English" or with a concurrent English translation, absent a Court order finding good cause. L.R. 11-3.10. Defendants' failure to provide an English translation of the documents is more than enough reason not to rely on them.

[15] Dkt. 138-2, p.4. Orit Shachar states they spend per month her son. *Id*.

First, Shachar admits that [REDACTED] costs are unnecessary. Specifically, Orit Shachar states her son is [REDACTED] Dkt. 132-2, p.4. [REDACTED][16] Shachar does not acknowledge, let alone address these facts. No money, at all, need be released to pay [REDACTED] It is Shachar's burden to show that the expenses he seeks payment for are necessary. He fails to do so here.

Second, the cost of the [REDACTED] is unreasonable and unsupported. Orit Shachar claims that her [REDACTED] But there is no explanation or evidence of [REDACTED] and no explanation of why that [REDACTED] Presumably, as an adult with [REDACTED] There is no evidence otherwise. Nor is there evidence to support the amount of the claimed expense, only various assertions by his mother that the cost of the [REDACTED] is either [REDACTED] or [REDACTED] per month.[17] It also appears that Shachar has double-counted this amount, as it makes up part of the [REDACTED] *See* Dkt. 138-2, p.28 (listing expenses for the Shachars' son, which include [REDACTED] for [REDACTED]" and total [REDACTED].

And Shachar does not argue that his son's [REDACTED] or any other reason, requires Shachar to pay [REDACTED] (or, perhaps as corrected, [REDACTED] per month in [REDACTED] Nor is adequate evidence provided for the claimed expenses—only untranslated documents in Hebrew. See L.R. 11-3.10 (requiring English

---

[REDACTED]

[17] Dkt. 138-2, p.4 ([REDACTED], p.28 ([REDACTED].

translations of foreign-language documents). And even were some need shown, and the expenses supported by evidence, Shachar seeks funding to cover the cost of [REDACTED] —there can be no showing of a "need" for such luxury. (Again, FTC staff's understanding is based on consultation with a staff member fluent in Hebrew.) To the contrary, if, as it appears (Dkt. 109, EX 88, 92), Shachar (or, perhaps, his son) [REDACTED]

**4. Living Expenses for Shachar, His Spouse, and Eight Other [REDACTED] Persons**

Shachar seeks payment of [REDACTED] for living expenses for himself, his spouse, and eight other unidentified persons.

As addressed above, there is no basis for using consumers' funds to pay the living expenses of [REDACTED] persons who are not subject to the PI's asset freeze and preservation provisions. As an initial matter, it is not clear how much the claimed expenses would be reduced if they were limited to what is necessary for Shachar and his spouse. There is thus no basis for releasing any amount at this time.

In addition, some of the claimed expenses are facially unreasonable. Most notably, Shachar seeks to pay [REDACTED] per month to lease a [REDACTED] automobile. That is a luxury, not a necessity. Shachar also seeks to spend [REDACTED] per month on water, [REDACTED] per month on food, and [REDACTED] per month on gas. These amounts are facially excessive.

In short, Shachar fails to show that the expenses he seeks authorization to pay are reasonable.

### D. Shachar Makes No Attempt to Show He Lacks Alternative Means to Meet His Expenses

Shachar states that he seeks funds to pay the living expenses of over a dozen people. While the PI preserves Shachar's assets, and assets he jointly owns with his spouse, it has no effect on the assets of any of the other dozen people whose expenses Shachar seeks to fund with consumers' money. And there is also no showing that Shachar and his spouse have no other income, unaffected by the PI.

To start with, Shachar was given $25,000 by the TRO, less than two months ago. That money can and should still be available to fund his living expenses.[18] Shachar states that all of that money has been spent, but does not explain on what. At a minimum, the Court should not release funds to Shachar for living expenses without an accounting showing that the $25,000 already released was spent appropriately.

And Shachar makes little attempt to meet his burden to show that none of the other persons for whom consumer funds are sought has funds that could be used to meet their needs, or that none of them has income or the capacity to earn income. Indeed, Shachar offers no information at all about the assets of these other persons beyond stating summarily that the Shachars' three living parents [REDACTED] [REDACTED] Dkt. 138-2, p.3. Perhaps that is so, but Shachar does not meet his burden to present evidence that would allow the Court to make such a finding. As to the other adults' assets, Shachar provides no information at all.

There is also no showing that the adults Shachar seeks to support with consumer funds have no income that could go to pay their own expenses. Indeed, it appears the opposite is true. As discussed above, Shachar's son [REDACTED] [REDACTED] And the Shachars' three living parents, who reside

[18] Indeed, if Defendants' claims about their strategy are true, Shachar should have been able to generate significant additional income by investing at least a portion of that amount. *See supra* footnotes 6 & 7, and accompanying text.

in [REDACTED] presumably benefit from [REDACTED] "Old Age Insurance" system,[19] which provides regular payments that could go at least some way towards paying for their expenses. Shachar provides no information, let alone evidence, regarding their retirement savings, pension, investments, assets or other sources of income.

The minimal information provided about the other members of the Shachars' household does not provide a basis for finding that they cannot generate any income, much less that they cannot meet their own needs.[20]

In sum, Shachar utterly fails to meet his burden to show that there is no other source for payment of the claimed expenses except the preserved funds—money that in equity belongs to consumers. This factor, like all others, weighs heavily against release of preserved funds.

## III. Shachar's Other Arguments Lack Merit

### A. The Shachars Do Not Risk Foreclosure

Shachar repeatedly invokes the spectre of imminent foreclosure and eviction, but provides no factual basis for such a claim. Nor is there one. In response to the coronavirus pandemic, the California court system recently imposed a temporary ban on foreclosures and evictions, which will last 90 days past the end of the current state of emergency.[21]

### B. There Is No Tracing Requirement

Shachar implies that release is appropriate because, he claims, the funds he will spend do not derive from tainted sales to OTA purchasers. But there is no evidentiary support for this bald claim, and in any event, it does not matter: preserving assets to ensure the possibility of equitable monetary relief does not turn on tracing those funds to the wrongful conduct.

---

[REDACTED]

[20] Indeed, with the Shachars providing them a home at no cost, their living expenses should be low.

[21] See https://www.ocregister.com/2020/04/06/coronavirus-california-halts-lender-foreclosures-renter-evictions/ (last visited April 9, 2020).

Case law makes clear that there is no requirement that funds to be used for redress (and thus properly subject to a freeze or preservation order) are *not* limited to those traceable to fraud. As the then-Chief Judge of this District explained, such a rule would lead to "absurd results," as "a defendant who was careful to spend all the proceeds of his fraudulent scheme, while husbanding his other assets, would be immune." *FTC v. J.K. Publ'ns, Inc.*, No. CV 99-00044, 2009 WL 997421, at *5 (C.D. Cal. Apr. 13, 2009) (quoting *S.E.C. v. Banner Fund Int'l*, 211 F.3d 602, 617 (D.C. Cir. 2000)) (internal quotation marks omitted); *accord Kemp v. Peterson*, 940 F.2d 110, 113-14 (4th Cir. 1991); *SEC v. Current Fin. Servs*., 62 F. Supp. 2d. 66, 68 (D.D.C. 1999); *SEC v. Grossman*, 887 F.Supp. 649, 661 (S.D.N.Y.1995) (holding that "[i]t is irrelevant whether the funds affected by the Assets Freeze are traceable to the illegal activity, [where defendants] are jointly and severally liable"); *see also FTC v. Bronson Partners, LLC*, 654 F.3d 359, 373 (2d Cir. 2011) (no tracing requirement for disgorgement).

Even if tracing were required, Shachar makes no attempt to show that the funds that he allegedly amassed outside of OTA[22] were segregated and preserved, and thus remain available now to meet his living expenses. Nor does it make any sense to think that, for example, the profits from real property sold multiple years ago has not long since been spent. *See* Dkt. 138-3, p.4 (listing purported profits from real estate transactions). Without evidence that the funds are untainted, the argument fails.

**IV. Any Release Should Be Limited, and Restricted to Foreign Assets**

If the Court is inclined to release any funds for living expenses, they should be limited to reasonable expenses actually and immediately necessary to provide

[22] Among other things, Shachar does not even begin to explain where he acquired the funds used to purchase the real estate or securities he claims to have sold for a profit. If those funds, too, were income from OTA, the profits from them are not untainted. The financial disclosures Shachar has submitted to the FTC do not reveal any other potential source of funding for these purchases.

for Shachar. The majority of the claimed expenses fall outside this scope, and should be denied.

Further, any release should be limited in time. Defendants claim that OTA will soon be profitable, and there is no reason why Shachar's spouse cannot seek employment or otherwise earn income to help support the family. Any alleged need for spending consumers' funds to pay Shachar's expenses is temporary, and any release should be limited in duration as well. Future expenses should be denied pending a future showing that, despite their use of the time to diligently seek employment or other sources of funding, the Shachars have been unable to do so.

Finally, any release of funds should be paid out of funds Shachar holds overseas. Recovering such funds for consumer redress pursuant to a judgment will likely be more speculative, costly and burdensome than the recovery of domestic assets. Thus, efficiency and equity requires that, to the extent any consumer funds are released, they should come solely from assets held overseas.

## CONCLUSION

Shachar fails to carry his burden to show that any of the relevant factors weigh in favor of the requested relief. All four factors bearing on release of frozen funds weigh firmly against Shachar's request: (1) The FTC is likely to succeed on the merits; (2) consumer injury far outstrips the amount of frozen and preserved funds; (3) Shachar's claimed expenses are unreasonable and unsupported; and (4) Shachar fails to show that he lacks access to alternative assets.

Accordingly, the Court should deny or sharply limit the requested release.

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

Dated: April 13, 2020

/s/ Andrew Hudson

Thomas M. Biesty
Rhonda Perkins
Andrew Hudson
Federal Trade Commission
600 Pennsylvania Ave., NW
Mailstop CC-8528
Washington, DC 20580
(202) 326-3043 / tbiesty@ftc.gov
(202) 326-3222 / rperkins@ftc.gov
(202) 326-2213 / ahudson@ftc.gov

John Jacobs
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, California 90024
(310) 824-4300 / jjacobs@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION