Thomas M. Biesty (NY Bar No. 4172896)
(202) 326-3043 / tbiesty@ftc.gov
Rhonda Perkins (VA Bar No. 75300)
(202) 326-3222 / rperkins@ftc.gov
Andrew Hudson (DC Bar No. 469817)
(202) 326-2213 / ahudson@ftc.gov
Roberto Anguizola (IL Bar No. 6270874)
(202) 326-3284 / ranguizola@ftc.gov
600 Pennsylvania Ave., NW, CC-8528
Washington, DC 20580

Local Counsel
John Jacobs (CA Bar No. 134154)
(310) 824-4300 / jjacobs@ftc.gov
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
(310) 824-4380 (fax)

Attorneys for Plaintiff
Federal Trade Commission

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Federal Trade Commission**, <br><br> Plaintiff, <br><br> vs. <br><br> **OTA Franchise Corporation**, et al., <br><br> Defendants. | No. 8:20-CV-00287 JVS (KESx) <br><br> **Opposition to *Ex Parte* Application to UnFreeze and Dissipate ELO Assets** |

Upon a substantial evidentiary showing, this Court found the FTC likely to prevail on its claims that Defendants, operating under the name "Online Trading Academy" ("OTA") and using at least three different corporate entities, defrauded

1

consumers out of substantial sums of money, and, accordingly, issued a preliminary injunction ("PI") restricting Defendants' ability to spend their assets, so as to preserve those assets for potential redress to injured consumers. Dkt. 130. The PI permits the Corporate Defendants to make some limited payments to carry on the Online Trading Academy business provided they can do so legally, in compliance with the PI, and without impinging on the Court's ability to grant effective final monetary relief for consumers. But the PI specifically bars Defendants from paying rent (directly or indirectly) to themselves. *Id*.

Defendant Eyal Shachar now seeks a modification of the PI to (a) permit the Corporate Defendants to use frozen funds to pay him (indirectly) substantial amounts in "rent," (b) permit the sale of the commercial properties Shachar owns (100%, though indirectly) and the distribution of half the proceeds to his non-party spouse, and (c) clarify that the funds received by his spouse would not be subject to the asset freeze. Dkt. 180.

The Court should reject this attempt to dissipate a substantial portion of the assets that the Court is preserving for redress to injured consumers.

## BACKGROUND

Defendant Eyal Shachar wholly owns ELO Investments, Inc. ("ELO"). Excerpts of Transcript of March 5, 2020 Deposition of Eyal Shachar ("Shachar Dep."), pp. 39-40, filed herewith as Attachment A to the Declaration of Andrew Hudson. ELO's principal place of business is the same as that of the Corporate Defendants: 17780 Fitch, Suite 200, Irvine, CA 92614.[1] ELO has no employees, but owns three pieces of commercial real estate. Shachar Dep., pp. 39-40. ELO has mortgages on each; together, ELO's monthly mortgage payments on the properties total $70,463. Dkt. 180-1, p. 3 (listing monthly mortgage payments of $46,689,

---

[1] *See* Statement of Information for ELO Investments, Inc., filed with the California Secretary of State, filed herewith as Attachment B to the Declaration of Andrew Hudson.

2

$17,818, and $5,956). The equity on these properties (approximately $5.7 million[2]) represents a substantial portion of the assets frozen or preserved for redress in this case. Dkt. 110, pp. 1-3 (noting Individual Defendants' assets totaled approximately $34 million, net of encumbrances, and Corporate Defendants' assets were outweighed by their liabilities[3]).

Shachar, through ELO, leases "the entirety" of the three properties to OTA under a lease with Corporate Defendant Newport Exchange Holdings, Inc. ("NE Holdings"). Dkt. 181-1, p. 4. Shachar is the sole owner of OTA and NE Holdings (Dkt. 180-1, p. 3), and unilaterally sets the rent OTA pays to ELO (i.e., himself). Excerpts of Transcript of March 6, 2020 Deposition of Newport Exchange Holdings, Inc. Pursuant to Rule 30(b)(6) ("NE Holdings Dep."), at p. 36, filed herewith as Attachment C to Declaration of Andrew Hudson.

Although all of the work needed to maintain the buildings is handled by OTA (Shachar Dep., pp. 41-42), and OTA pays all taxes, insurance, and maintenance costs (Dkt. 180, p. 8), Shachar has directed OTA to pay ELO a total of $183,700 in rent each month—more than double ELO's expenses. Dkt. 180-1, pp. 3-4 (listing monthly rent amounts of $132,700, $35,000, and $16,000). OTA's Chief Financial Officer has never assessed whether the company's rental payments to ELO are market rate, nor has anyone else. NE Holdings Dep., pp. 6-7, 36; Dkt. 48-1, p. 1 (Mr. Neilson is CFO of OTA).

The PI specifically bars the Corporate Defendants from paying rent, directly or indirectly, to any of the Defendants. Dkt. 130, p. 13. Thus it bars OTA from

---

[2] Shachar lists values and mortgage balances for each of the three properties, yielding equity as follows: (1) 17780 Fitch is worth $14 million with $9,674,000 in debt, for $4,326,000 in equity; (2) 17791 Fitch: $4 million value, $3.3 million debt, for $700,000 in equity; and (3) 17771 Fitch: $1.8 million value, $1,093,000 debt, for $707,000 in equity. These equity values sum to $5,733,000.

[3] The Corporate Defendants' assets have since been even further diminished by more than $2.7 million as Defendants continue to make substantial payments for payroll and other expenses that they view as authorized by the PI. Hudson Decl. ¶¶ 6-11.

paying rent to ELO. The PI also orders the Individual Defendants to preserve their assets, and bars the sale of such assets. Thus, the PI bars the sale of the commercial real estate Shachar owns indirectly through ELO.

Shachar now seeks to modify the PI to permit the Corporate Defendants to pay ELO the "rent" he set, to permit the sale of the commercial real estate Shachar owns through ELO, and to permit the disbursement of half the proceeds from such sales to Shachar's non-party spouse, while clarifying that those proceeds would no longer be subject to the PI's asset freeze and preservation provisions. Dkt. 180.

# ARGUMENT

Shachar's latest request once again asks the Court to modify the PI to allow him to spend down a significant portion of the limited funds available to make redress to injured consumers. Shachar offers no explanation for why he should be allowed to pay himself "rent" out of frozen funds (Shachar owns both the landlord and the tenant), and his argument that his spouse is "entitled" to millions of dollars currently preserved for redress misstates the law and relies on a single, in-apt, out-of-circuit case. The Court should deny the application.

## I.     Legal Standard

"A party seeking modification . . . of an injunction bears the burden of establishing that a significant change in facts or law warrants revision . . . of the injunction." *Hawai'i v. Trump*, 871 F.3d 646, 654 (9th Cir. 2017) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)).

## II.    Shachar Should Not Be Allowed to Pay Himself "Rent" Out of Frozen Funds, Nor to Unfreeze Assets by Distributing Them to His Spouse

The PI correctly excluded from the list of permitted corporate expenses rental payments to any Defendant (directly or indirectly). The Court permitted limited payments with the goal of allowing the Corporate Defendants to resume their business operations if they could do so legally and profitably. It is becoming increasingly clear that is not possible. In any event, interested payments—of any

4

kind—serve no part of that goal. The bar on interested rental payments is a logical—and necessary—extension of the PI's asset freeze and preservation provisions. Shachar offers no new evidence or legal authority that warrants modifying these provisions.

Shachar's argument for allowing him to pay himself wildly inflated "rent," and to allow the liquidation and distribution of millions of dollars in equity to a non-party outside the asset freeze, seems to stem entirely from a plain misstatement of the applicable law. Specifically, Shachar claims that his spouse, Orit, "owns 50% of ELO." Dkt. 180, p. 9. That is not true. Shachar has testified under oath that he owns 100% of ELO. Shachar Dep., pp. 39-40. Despite this, Shachar now claims that because California is a community property state, and because ELO was formed while Shachar and Orit were married, Orit "owns 50%" of ELO. But the provisions of California law he cites do not support his claim. In fact, the law is the opposite of what Shachar claims.

Shachar cites Cal. Family Code §§ 751 and 760. Those provisions state:
> "The respective interests of each spouse in community property during continuance of the marriage relation are present, existing, and equal interests." § 751.
> "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." § 760.

Contrary to Shachar's claim (for which he cites no applicable case law), these provisions *do not* mean that each spouse owns a simple one-half share of all assets. Rather, "each spouse has a vested *undivided* one-half interest in the community property" (*Estate of Wilson*, 183 Cal. App. 3d 67, 72 (Cal. Ct. App. 1986) (emphasis added)), all of which "is liable for a debt incurred by either spouse … regardless of whether one or both spouses are parties to the debt or to a judgment

5

for the debt." Cal. Family Code § 910. In short, an asset's status as "community property" does not shield it, or any part of it, from one spouse's liabilities—it *exposes* the property to the liabilities of *both* spouses, both separate and joint.[4]

The Ninth Circuit has expressly rejected the argument Shachar makes here. In *In re McIntyre*, 222 F.3d 655, (9th Cir. 2000), the federal government had filed a tax lien against a couple's community property based on the tax liabilities of one spouse. The other spouse appealed, arguing that her interest in the community property barred the government from imposing a tax lien on the whole of the property for her husband's debts. The Ninth Circuit rejected that argument, explaining that under California's community property regime, each spouse has an "interest" in the whole of the community property sufficient to permit attachment of such a lien. *In re McIntyre*, 222 F.3d 655, 658-60 (9th Cir. 2000).

Shachar ignores the relevant provisions of the California Family Code and applicable precedent, and instead rely entirely on an unpublished opinion from the Eleventh Circuit and a district court ruling in that circuit that was rendered against the backdrop of a different state's (Florida's) property law regime. Dkt. 180, pp. 11-21 (citing the *FTC v. Vylah Tech* case). As the FTC has already demonstrated (Dkt. 175, p. 2, footnote 1), that case does not support Shachar's argument here. First, the *Vylah Tech* decision (as Shachar's extensive quotation of it makes plain) turned on a tracing analysis in which the district court assessed whether certain funds in a jointly-held bank account derived from a defendant's fraud, or a non-defendant's separate, untainted income:

> Based on the evidence before the Court, Defendants have valid income separate from the deceptive practices alleged in the Complaint. The Court thus declines the Government's

---

[4] *See also Marriage of Girouard & Frazier*, No. A131286, 2012 WL 3991504, at *10 (Cal. Ct. App. Sept. 12, 2012) ("Neither [Cal. Family Code § 751] nor any other law of which we are aware gives either spouse an exclusive, divisible, 50 percent interest in a community property asset during the ongoing marriage.").

6

1  conclusory position that, because Vylah Tec wrote checks to
2  Heights Title Company, Robert and Olga's home must have
3  used tainted money for the down payment.

*FTC v. Vylah Tec LLC*, 328 F. Supp. 3d 1326, 1340 (M.D. Fla. 2018). But in this Circuit, no tracing analysis is necessary, so the logic of *Vylah Tech* is inapplicable. *See FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 601 (9th Cir. 2016) ("[T]he tracing requirements for 'equitable' restitution do not apply in § 13(b) actions.") (citing *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 373-74 (2d Cir. 2011)).

      Second, even if the provenance of the assets were relevant, the evidence would not support a finding that the assets derive from a "non-tainted" source. The only "evidence" to that effect is Shachar's conclusory statement that a portion of the down payment on the properties "came from monies that Orit and I earned by investing in residential real estate." Dkt. 180-1, p. 3. No documentation is provided to support this claim. Nor is the claim enough, as there is no basis for concluding that the funds used for the "investing" came from ANYWHERE other than OTA. *See* Dkt. 161-1, ¶2 (testimony of Orit Shachar demonstrates the funds could not have come from any separate income she earned). In which case, any "investing" profits would also be tainted.

      Third, Shachar admits that all of ELO's income since its inception has come from OTA. Dkt. 180-1, p. 4 ("After ELO was formed and purchased [the properties], ELO leased the entirety of the [properties] to OTA…."). Thus the vast majority of the equity in the properties, if not all, derives from OTA, not from some (un-evidenced) "untainted" source.

      Fourth, there is no reason in equity to permit the distribution of millions of dollars of preserved funds to Shachar's spouse, or distribution of "rental" payments to Shachar. The Court has already authorized the Shachars to spend up to $25,000 per month on living expenses. There is no evidence of any need for further funds. Shachar's conclusory assertion that "it is logical, for tax and normal purposes, and

for fairness to Orit Shachar, that OTA [NEH] continue to make its regular rental payments to ELO," is facially inadequate and unpersuasive. To the contrary, any marital assets are assets Shachar could potentially rely on for his current expenses or to pay a judgment in this matter, and so their use could affect the relief that may ultimately be available in this action, making them a permissible subject of the Court's broad equitable powers to preserve appropriate remedies in this Section 13b action. *See FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 599 (9th Cir. 2016) (the Court may "'go beyond matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances") (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)).

### III. ELO Should Remain Subject to the Asset Freeze

As noted above, ELO and its assets are all owned directly or indirectly by Shachar. Thus, the PI's provisions ordering Shachar to preserve, and not sell, his assets apply with full force to ELO and its commercial properties. The evidence firmly supports these provisions. Indeed, the evidence recited above demonstrates that ELO is not only one of Shachar's assets, but part of the common enterprise with the other Corporate Defendants, all of which are owned by Shachar and used to conduct the OTA business. In either case, its assets should be preserved to fund potential redress to injured consumers. There is no basis to release ELO from the asset preservation provisions of the PI and allow Shachar another avenue to dissipate assets.

### CONCLUSION

For the above reasons, the Court should deny Defendants' application.[5]

---

[5] Shachar briefly argues (without any authority) that the number of consumers who complained to the FTC suggests Defendants are likely to prevail (App. at 6), and that the FTC must prove the elements of common-law fraud (App. at 6-7). Shachar does not seem to think the Court should take these arguments seriously, and it should not, as they are wrong.

|   |   |
|---|---|
|   | Respectfully submitted, |
|   | ALDEN F. ABBOTT<br>General Counsel |
| Dated:  April 29, 2020 | /s/ Andrew Hudson<br>Thomas M. Biesty<br>Rhonda Perkins<br>Andrew Hudson<br>Roberto Anguizola<br>Federal Trade Commission<br>600 Pennsylvania Ave., NW<br>Mailstop CC-8528<br>Washington, DC 20580<br>(202) 326-3043 / tbiety@ftc.gov<br>(202) 326-3222 / rperkins@ftc.gov<br>(202) 326-2213 / ahudson@ftc.gov<br>(202) 326-3284 / ranguizola@ftc.gov<br><br>John Jacobs<br>Federal Trade Commission<br>10990 Wilshire Boulevard, Suite 400<br>Los Angeles, California 90024<br>(310) 824-4300 / jjacobs@ftc.gov<br><br>Attorneys for Plaintiff<br>FEDERAL TRADE COMMISSION |