Thomas M. Biesty (NY Bar No. 4172896)
(202) 326-3043 / tbiesty@ftc.gov
Rhonda Perkins (VA Bar No. 75300)
(202) 326-3222 / rperkins@ftc.gov
Andrew Hudson (DC Bar No. 469817)
(202) 326-2213 / ahudson@ftc.gov
Roberto Anguizola (IL Bar No. 6270874)
(202) 326-3284 / ranguizola@ftc.gov
600 Pennsylvania Ave., NW, CC-8528
Washington, DC 20580

Local Counsel
John Jacobs (CA Bar No. 134154)
(310) 824-4300 / jjacobs@ftc.gov
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
(310) 824-4380 (fax)

Attorneys for Plaintiff
Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Federal Trade Commission**, <br><br> Plaintiff, <br><br> vs. <br><br> **OTA Franchise Corporation**, et al., <br><br> Defendants. | No.  8:20-CV-00287 JVS (KESx) <br><br> **Opposition to *Ex Parte* Application to Pay Non-Instructor Contractors** |

Upon a substantial evidentiary showing, this Court found the Federal Trade Commission ("FTC") likely to prevail on its claims that Defendants defrauded consumers out of substantial sums of money, and, accordingly, issued a

1

Preliminary Injunction ("PI") restricting Defendants' ability to spend their assets, so as to preserve those assets for potential redress to injured consumers. Dkt. 130. The PI permits the Corporate Defendants to make some limited payments to carry on Online Trading Academy's ("OTA") business provided they can do so legally, in compliance with the PI, and without impinging on the Court's ability to grant effective final monetary relief for consumers. *Id.*

Defendants now seek permission to pay approximately $135,000 to certain non-instructor independent contractors for past wages. Dkt. 191. The Court should reject Defendants' attempt to compensate independent contractors for commissions on deceptive sales made prior to the entry of the Temporary Restraining Order ("TRO"), Docket No. 46, and the PI and to further dissipate assets frozen for possible redress to consumers.

## BACKGROUND

The PI allows Corporate Defendants to pay: (1) employees, other than Defendants, their usual current salaries; (2) current monthly or other periodic payments to independent contractors who serve as regular instructors; and (3) certain other business expenses.

On April 13, Defendants filed an *ex parte* application for approval to pay regular compensation to non-instructor independent contractors. Dkt. No. 153. The FTC opposed Defendants' request to pay an untold number of unidentified independent contractors unspecified amounts. Dkt. No. 158. The Court denied Defendants' application without prejudice to a showing of the specific services such contractors perform, and the relationship of the services to the production of income for OTA. Dkt. No. 170.

Defendants now file their sixth application seeking payments using the Court's *ex parte* procedures. Dkt. Nos. 92, 139, 140, 153, 180, 191.[1] Defendants

---

[1] The Court requires that parties use *ex parte* applications for "extraordinary relief only." Defendants claim *ex parte* relief is warranted because payment of back pay to these independent contractors is critical to OTA producing income in the

2

request that the Court authorize payments "presently owed" totaling $135,386.50 to regular independent contractors who are not "instructors," including $109,263 to 33 preview event presenters, $12,623.50 to eight online classroom teachers, and $13,500 to two website developers. Dkt. No. 191-1 at 3-4. Defendants also request to make regular payments to these individuals going forward.

Defendants seek to allow the Corporate Defendants to make additional hefty payments from frozen funds, including for sales that were tainted by deception. The Court should reject this request, or, at the least, sharply limit it, including by denying payments for activities related to pre-TRO sales.

## ARGUMENT

The bulk of payments for which Defendants seek to release frozen funds ($109,263) is to "free class presenters" who sell OTA's services to consumers at "Preview" events. Dkt. 191-1 at 2. According to Defendants, in order for OTA to produce critical income going forward, OTA must pay these salespeople amounts they are "presently owed." *Id*.

Preview Events were live sales presentations Defendants used to induce consumers to purchase a longer sales presentation called the Market Timing Orientation ("MTO"). Dkt. 31 at 4-6. Defendants used Preview Events and MTOs to close sales for Defendants' more expensive packages of courses. *Id.* at 16. These presentations contained numerous earnings claims and the presenters received commissions on sales made at these events. *Id.* at at 4-6 and footnote 16. These sales events have led tens of thousands of consumers to pay millions of dollars based on Defendants' false and unsubstantiated claims.

The requested payments to these presenters for amounts "presently owed" are presumably for commissions on sales made to consumers prior to the entry of the TRO. Defendants have not shown otherwise. The Court found that the FTC

---

future. Dkt. No. 191 at 4. To the FTC's knowledge, OTA has not yet resumed sales. The request for this backpay is not an emergency.

demonstrated, in part, by "documentation of Defendants' advertisements and live sales events" that Defendants made false or unsubstantiated claims and that the FTC is likely to prevail on the merits. Dkt. 130 at 3-4. Salespeople who participated in inducing consumers to purchase Defendants' courses using deceptive claims should not be compensated from funds preserved for injured consumers.

Defendants also argue that these individuals must be paid going forward to produce critical income for OTA. It is not clear from Defendants' application how OTA will utilize these salespeople going forward. As Defendants admit in their business plan briefing, there is a business slowdown everywhere due to COVID-19, Dkt. 190-2 at 4, and restrictions remain on holding in-person events.[2] To date, Defendants' sales had been driven almost entirely by live sales events, including the Preview Events. Neither Defendants' application nor their business plan explains how they will generate sales going forward, much less show that the presenters they seek to pay will be necessary to those efforts.

Defendants have argued that OTA can continue doing business while operating in full compliance with the law and this Court's orders. On the strength of those representations, the Court carved out exceptions to the asset freeze in the PI, which allow Corporate Defendants to pay certain employees, independent contractors, and business expenses. Dkt. 130 at 13. However, since entry of the TRO on February 25, Docket No. 46, Defendants have spent more than $2.7 million of frozen funds on various purported business expenses, apparently without generating any revenue. Dkt. 192-1, ¶¶ 6-11. At the Court's request, Defendants recently submitted a business plan. But that document does not discuss Defendants' strategy to generate income (or if there is one), much less how they can bring in sufficient income to cover their large expenditures going forward. Dkt. No. 190. In

---

[2] https://covid19.ca.gov/stay-home-except-for-essential-needs/ (California stay-at-home order)(last visited April 29, 2020).

short, the evidence does not suggest that OTA can operate legally and profitably. Their ongoing spending only diminishes the limited funds preserved for consumer redress. The Court should reject yet another attempt by Defendants to dissipate a substantial portion of the assets that should be preserved for redress to injured consumers, particularly for payments to presenters who were involved in perpetuating Defendants' deceptive scheme prior to the TRO.

## CONCLUSION

For the above reasons, the Court should deny the relief sought in Defendants' application or, at minimum, limit payments to activities not related to sales made to consumers prior to the entry of the TRO, and those shown to be necessary to current operations (if any).

|     |     |
| --- | --- |
|     | Respectfully submitted, |
|     | ALDEN F. ABBOTT<br>General Counsel |
| Dated: April 29, 2020 | /s/ Rhonda Perkins<br>Thomas M. Biesty<br>Rhonda Perkins<br>Andrew Hudson<br>Roberto Anguizola<br>Federal Trade Commission<br>600 Pennsylvania Ave., NW<br>Mailstop CC-8528<br>Washington, DC 20580<br>(202) 326-3043 / tbiety@ftc.gov<br>(202) 326-3222 / rperkins@ftc.gov<br>(202) 326-2213 / ahudson@ftc.gov<br>(202) 326-3284 / ranguizola@ftc.gov<br><br>John Jacobs<br>Federal Trade Commission<br>10990 Wilshire Boulevard, Suite 400<br>Los Angeles, California 90024<br>(310) 824-4300 / jjacobs@ftc.gov<br><br>Attorneys for Plaintiff<br>FEDERAL TRADE COMMISSION |

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

Dated:  April 29, 2020

/s/ Rhonda Perkins
Thomas M. Biesty
Rhonda Perkins
Andrew Hudson
Roberto Anguizola
Federal Trade Commission
600 Pennsylvania Ave., NW
Mailstop CC-8528
Washington, DC 20580
(202) 326-3043 / tbiety@ftc.gov
(202) 326-3222 / rperkins@ftc.gov
(202) 326-2213 / ahudson@ftc.gov
(202) 326-3284 / ranguizola@ftc.gov

John Jacobs
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, California 90024
(310) 824-4300 / jjacobs@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION